**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Frederick VOEGELE, Defendant.**

**Crim. No. 47025.**

United States District Court,
E. D. Michigan, S. D.

July 24, 1972.

Robert P. Hurlbert, Detroit, Mich., for plaintiff.

Robert Lesnick, Dearborn, Mich., for defendant.

## MEMORANDUM OPINION

JOINER, District Judge.

Defendant Voegele has made four motions regarding the suppression of evidence or dismissal of charges. The

Court has taken testimony, listened to the arguments of counsel, and read the supporting briefs filed and decided to deny all four motions.

The facts support the following description of the way in which the case arose: Richard Curtis Gilmore was arrested by the Pontiac police for possession of what is commonly known as a sawed-off shotgun. He subsequently informed government agents that the barrel of the shotgun had been shortened at Brigg's Sporting Goods Shop in Keego Harbor. The government agents subsequently obtained a search warrant authorizing a search of the gunshop for the residual portion of the barrel, any filings or other debris, and the tools used in the shortening of the barrel. When the agents went to execute the warrant they observed the defendant, proprietor of the shop, leaving the shop and starting to drive away from the premises. (Both agents were acquaintances of the Defendant.) One of the agents asked the Defendant to stop and return to the gunshop, thus avoiding the necessity for forcing their way onto the premises. The Defendant voluntarily drove his truck alone back to the gunshop. The agents showed the Defendant the search warrant. He opened the shop for them. The agents showed the Defendant the sawed-off barrel and Voegele replied, "Oh my God, I'll tell you about it." Voegele was read a warning in the following language:

"Before we ask you any questions, it is my duty to advise you of your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court, or other proceedings.

"You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning.

"You may have an attorney appointed by the U.S. Commissioner or the court to represent you if you cannot afford or otherwise obtain one.

"If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer.

"However, you may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire."

He then admitted sawing off the barrel two days before. He admitted he knew this to be a violation of the law. At the request of the officers, Voegele pointed out the other portion of the barrel and the hack saw used. Voegele was then arrested but not handcuffed. When all items listed in the search warrant were seized, the agent in charge ordered his associates to terminate the search and to begin a compliance inspection, which is authorized under 18 U.S. C. § 923(g). During the compliance inspection, the agents discovered the other items contraband and evidence which the defendant seeks to suppress. Voegele cooperated with the officers in this inspection and directed the officers to other guns that were seized.

The Defendant has asserted that when the government agents requested him to return to the gunshop that he was actually under an illegal arrest, and because of the so-called illegal arrest any admissions or items of evidence subsequently discovered should be barred. The only testimony presented on this issue was that from Agent Patrick Mueller. He testified that as the Defendant left the gunshop, he followed and within a block or two signaled with his hand that he wanted the Defendant to stop. The Defendant recognized the agent and, at the agent's signal, pulled his car off the road. At that time, Defendant Voegele was requested to return to his store. The Defendant willingly consented to do so. Defendant Voegele returned to the store in his own vehicle,

unaccompanied by any of the government agents. The Court concludes, based on the testimony presented, that there was no arrest at this time, illegal or otherwise, and there exists no grounds in this area to bar any admissions or evidence.

■ Defendant Voegele also argues that evidence found pursuant to the search warrant should be suppressed. He asserts that there was no probable cause to justify issuing a search warrant, and because the warrant was issued in violation of Rule 41(b) of the Federal Rules of Criminal Procedure, asserts that this rule does not authorize a search for mere evidence of a crime but rather is limited to instruments used in the commission of a crime. The affidavit supporting the request for a search warrant, supported at the hearing by the testimony of the agents, defeats the first half of this motion. The affidavit and evidence assert that a person who was arrested while in possession of a sawed-off shotgun had informed a government agent that the barrel of the shotgun had been altered from its original size to its illegal shortened length at the Defendant's gunshop. This was sufficient to cause a warrant to be issued.

■ The argument that Rule 41(b) limits issuance of search warrants to items intended for use or used in the commission of a criminal offense is not tenable. 18 U.S.C. § 3103a provides, "In addition to the grounds for issuing a warrant in (Rule 41), a warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." As was said in Warden v. Hayden, 387 U.S. 294, 306, 87 S.Ct. 1642, 1649, 18 L.Ed.2d 782 (1967), "(the premise) . . . that (the) government may not seize evidence simply for the purpose of proving crime has . . . been discredited."

■ The Defendant also moves to suppress evidence found during the compliance inspection, authorized under 18 U.S.C. § 923(g), because the compliance inspection was not conducted during business hours. The statute contains an authorization to "enter during business hours" for the purpose of inspecting records and stock of any firearms dealer. This inspection is what the government agents describe as a compliance inspection. The statute does not bar conducting a compliance inspection where legal entry has been gained during non-business hours. In the instant case the government agents had gained legal entry pursuant to a valid search warrant. This having been accomplished the agents were free to conduct the compliance inspection. This is analogous to the cases where a Defendant has sought to suppress evidence discovered during a search which was timely begun pursuant to a daytime warrant but continued into the night time. This point has been considered in a number of cases and the rule seems clear that it is sufficient if the search begins in the daytime, although it continues after dark. United States v. Joseph, 174 F. Supp. 539 (E.D.Pa.1959), aff'd 278 F.2d 504, cert. denied 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52, and United States v. Bell, 126 F.Supp. 612 (D.C.D.C.1955), aff'd. 240 F.2d 37.

■ The provisions of 18 U.S.C. § 923 authorizing entry for the purpose of inspecting and examining records and stock are a part of a broad comprehensive treatment of licensing the manufacture, sale and distribution of firearms. " . . . close scrutiny of this traffic is undeniably of central importance in federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." United States v. Biswell, 406 U.S. 311, 315, 92 S.Ct. 1593, 1596, 32 L. Ed.2d 87 (1972). The act deals with all kinds of weapons or destructive devices, as well as with importers, manufacturers, dealers, pawn brokers and collectors of firearms. It provides stringent rules about these dangerous weapons. In no way can the language "enter during business hours" found in Section 923(g) be construed to proscribe the carrying

on of an inspection beyond business hours or during a time when the agents were otherwise lawfully on the premises. It is also clear that the inspection authorized by Section 923 is an important part of the overall regulation of firearms and destructive devices. The wording of the statute itself lends credence to the Court's interpretation.[1] Section 923(g) provides that records must be made available at "all reasonable times". Certainly a reasonable time must be when all parties concerned are validly on the premises. The only fair construction of the statute is that a compliance inspection may be conducted at a reasonable time, and a reasonable time is when entry is gained during business hours, or in some otherwise valid manner, such as with a search warrant or when the proprietor has willingly consented to the entry.

It should be noted that the policy of the business hours limitation in the statute is to prevent the government from harassing the small businessman by compelling him to open his shop for a compliance inspection at any hour of the day or night. Defendant Voegele had already voluntarily returned to his shop for another reason, so there was no great inconvenience involved in subjecting him to the inspection, and thus no violation of the policy this portion of the statute seeks to implement. Although Defendant was present and consented to the compliance inspection, the more important fact is that the officers entered the premises validly and were validly on the premises at the time of the inspection. "In the context of a regulatory inspection system of business premises which is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute . . . When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms and ammunition will be subject to effective inspection." United States v. Biswell, 406 U.S. 311, 315–316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87, 40 L.W. 4489, 4491 (1972). The compliance inspection as conducted does no harm to the Defendant's Fourth Amendment Constitutional Rights, United States v. Biswell, supra. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) are not to the contrary.

■ It also appears to the Court that the Defendant not only consented to, but cooperated with the officers in, the compliance inspection after being placed under arrest and warned about his constitutional rights. The record discloses that he led the officers to certain of the

---

1. Section 923(g) provides as follows:
Each licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary may by regulations prescribe. Such importers, manufacturers, dealers, and collectors shall make such records available for inspection at all reasonable times, and shall submit to the Secretary such reports and information with respect to such records and the contents thereof as he shall by regulations prescribe. The Secretary may enter during business hours the premises (including places of storage) of any firearms or ammunition importer, manufacturer, dealer, or collector for the purpose of inspecting or examining (1) any records or documents required to be kept by such importer, manufacturer, dealer, or collector under the provisions of this chapter or regulations issued under this chapter, and (2) any firearms or ammunition kept or stored by such importer, manufacturer, dealer, or collector at such premises. Upon the request of any State or any political subdivision thereof, the Secretary may make available to such State or any political subdivision thereof, any information which he may obtain by reason of the provisions of this chapter with respect to the identification of persons within such State or political subdivision thereof, who have purchased or received firearms or ammunition, together with a description of such firearms or ammunition.

guns confiscated by the officers. The attitude of the Defendant at that time appears to the Court to amount to a consent to an inspection at this time, United States v. Burgos, 269 F.2d 763 (2 Cir. 1959), cert. denied 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960); United States v. MacLeod, 207 F.2d 853 (7 Cir. 1953), and, although waiver of constitutional rights is not to be lightly assumed, there appears to be clear and positive evidence that there was consent to the search, United States v. Smith, 308 F.2d 657 (2 Cir. 1962), cert. denied 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716. This is supported by the fact that this all took place after the arrest was made and the warnings were given, as well as his making a statement to the officers, United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). The issue is not whether the consent was sufficiently broad to permit an independent search. It is a narrower issue. Was the consent and cooperation of a sufficient nature to show that the compliance inspection that was then being conducted by the officers was reasonable. It clearly was.

Lastly, the Defendant asserts that Count One of the Indictment is not valid because Section 5861 of 26 U.S.C. prohibits a person from making a firearm. Defendant contends that merely sawing a gun barrel into two pieces, by itself, cannot be construed as making a firearm. The Defendant has overlooked the definitional portion of the statute, 26 U.S.C. § 5845(i), which provides that the term "make" includes altering a firearm. This, the Defendant is alleged to have done when he cut the gun barrel into two pieces. It should make no difference either, whether at the time the barrel was sawed off, the stock was or was not attached to the barrel. In either case, a firearm was altered and thus was "made" within the terms of the statute.

For the above reasons, the Defendant's motions are denied.