**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Victor PETRUCCI, Defendant-Appellant.**

**No. 72–2964.**

United States Court of Appeals, Ninth Circuit.

Sept. 10, 1973.

Rehearing Denied Dec. 10, 1973.

that it was not entitled to an affirmative judgment because the statute of limitations precluded further assessment.

**330**

Morris Lavine (argued), Los Angeles, Cal., for defendant-appellant.

D. Henry Thayer, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL and WALLACE, Circuit Judges, and PECKHAM,* District Judge.

PECKHAM, District Judge:

The defendant, a licensed gun dealer, was prosecuted for several violations of the Gun Control Act of 1968, 18 U.S.C. § 922 et seq., and for illegal possession of two tear gas guns in violation of the National Firearms Act, 26 U.S.C. § 5861(d). The grand jury returned an indictment in nine counts. Count nine was dismissed before trial and defendant was found guilty by a jury on the remaining eight counts.

In counts one and two the defendant was charged with knowingly selling firearms to a minor; in counts three and five, with knowingly selling firearms to a convicted felon; in counts four and six, with the failure to properly record the transactions charged in counts three and five. Count seven charges the defendant with illegal possession of two tear gas guns and count eight with the failure to keep records or receipts of twelve guns found in his store.

## I

### FACTS

In March of 1972, an agent of the Alcohol, Tobacco, and Firearms Division of the Treasury Department (ATF agent) and Norman Abrams, a convicted felon, went into the defendant's store and on two occasions purchased firearms from the defendant notwithstanding the fact that Abrams told the defendant that he was a felon. With respect to the first purchase, the defendant was found to have falsified the records so as to make it appear that the firearms sold had never been in the store. In the second purchase by Abrams, the defendant sold the firearms to him under an assumed name.

After these two sales, A.T.F. agents procured a search and an arrest warrant.[1] Armed with the warrants, during normal business hours, the agents effected the arrest. They then proceeded to inventory the firearms and compare the inventory with the records. Initially they found nineteen firearms

---

* Honorable Robert F. Peckham, United States District Judge for the Northern District of California, sitting by designation.

1. The warrant read, in part: "There is now being concealed certain property, namely firearms records, and United States currency with recorded serial numbers, three twenty dollar bills with serial numbers, G 08606851A, G 11314128B, L 73197040B, which are fruits, instrumentalities and evidence of violations of Title 18 U.S.C. Section 922(b)(5); 922(d)(1); 922(m); and 924(a)."

without receipts, but because the inventory lasted so long, the defendant (released on bond), had already returned from a hearing before the Magistrate. He accounted for seven of the firearms, which were not seized, but the remaining twelve were seized and form the basis for count eight in the indictment.

Additionally, two tear gas guns, found in the store, were of the type required to be registered with the Treasury Department.

In addition a review of A.T.F. forms revealed a wholly separate set of transactions where the defendant sold firearms to a minor. The minor's age appeared on the face of the A.T.F. forms. The defendant was shown at trial to have at least looked at the minor's driver's license. These transactions became the basis for count one and two of the indictment.

From a conviction on all eight counts the defendant appeals. He asserts no less than fourteen different grounds for error. We discuss only the most salient.

## II

### INTERSTATE NEXUS

■ It is conceded by the government that it has not charged nor proved that the firearms in question have any interstate nexus. It is the law in this circuit, however, that Congress intended, in the Gun Control Act of 1968, to regulate all businesses engaged in importing, dealing, and manufacturing firearms, United States v. Redus, 469 F.2d 185 (9th Cir. 1972), and that Congress, consistent with the Constitution may reach wholly intrastate activities. United States v. Colicchio, 470 F.2d 977 (4th Cir. 1972); United States v. Lebman, 464 F.2d 68 (5th Cir. 1972). See Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), holding Congress may reach intrastate loansharking. So long as the wholly intrastate activity falls within a category of activity which affects commerce, Congress may validly enact criminal statutes. The Congressional purpose, as set

forth in the legislative history, is to assist the states effectively to regulate firearms traffic within their borders. S.Rep. 1097, 90th Cong., 2d Sess. (1968); H.R.Rep. 1577, 90th Cong., 2d Sess. (1968). Illegal intrastate transfer of firearms is part of a pattern which affects the national traffic and Congress can validly enact a comprehensive program regulating all transfers of firearms. See Cody v. United States, 460 F.2d 34 (8th Cir. 1971).

United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) is inapposite. The *Bass* case turned on Congress's failure to clearly manifest its intent to regulate intrastate activity when it passed the National Firearms Act. The Gun Control Act, however, has been held not to be subject to the same criticism. *Redus, supra.* Moreover, some courts have suggested that the business of intrastate transfer of weapons has a greater nexus with interstate commerce than does mere possession which is regulated by the National Firearms Act. United States v. Nelson, 458 F.2d 556 (5th Cir. 1972). Accordingly, there is no merit to the contention that the conviction is invalid for failure to charge and prove interstate nexus.

■ With respect to the charges in count seven brought pursuant to 26 U.S.C. § 5861(d), for illegal possession of a pen gun which can fire a bullet, there is no requirement whatever to prove any interstate commerce nexus as the statute is passed pursuant to Congress's taxing power. United States v. Tous, 461 F.2d 656 (9th Cir. 1972); United States v. Giannini, 455 F.2d 147 (9th Cir. 1972).

## III

### FAILURE TO REQUIRE WILLFULNESS

■ The indictment originally charged that the defendant knowingly and willfully did the acts charged, but willfulness in not an element of the crime involved. United States v. Freed, 401 U.S. 601, 607–608, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); United States v.

Jones, 446 F.2d 12, 13 (9th Cir. 1971). On the morning of the trial the government offered a superseding indictment which omitted the word "wilfully." The trial court refused to allow the superseding indictment, but followed the practice approved by this court in United States v. Harvey, 428 F.2d 782 (9th Cir. 1970). The court announced, from the beginning, that it would refuse to instruct on the word "wilfull" as that was mere surplusage. (R.T. 28). This does not amount to a modification of the indictment. *Harvey, supra.* Any prejudice to the defendant was obviated by the court when it announced its intention at the start of the trial that it would not instruct on the word "wilfull". *See also* United States v. Neilson, 471 F.2d 905 (9th Cir. 1973).

## IV

## SEIZURE OF THE FIREARMS

█ Defendant contends that the taking of the firearms from his store violated his fourth amendment rights. These firearms were introduced in evidence, over objection, and the trial court refused to grant a pretrial motion to suppress. The A.T.F. agents had a valid search warrant authorizing the seizure of only defendant's records. But apart from the warrant, 18 U.S.C. § 923(g) gives the A.T.F. agents, during normal business hours, the right to examine the records and inventory firearms. The recent case of United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) approved Congress's authority to allow such warrantless searches. Having intruded legitimately, upon discovery of several unrecorded firearms, the agents were free to seize the weapons without a warrant as evidence or instrumentalities of illegal activity now in their "plain view" as a result of a lawful search. *See* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). See also Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 290, 17 L.Ed. 2d 210 (1967), abolishing the distinction between mere evidence and instrumentalities of crime. In the *Biswell* case

the Court approved the seizure of firearms held without payment of the appropriate tax to the Treasury Department, notwithstanding the fact that the agents did not have a warrant. The court felt that Congress's balancing of the relevant concerns was not an unreasonable one. The court reasoned that businessmen who engage in federally regulated and licensed commercial activity accept the burdens and benefits of their activity. *Compare Biswell, supra,* and *Colonnade Catering Corporation,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) *with* Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). *See also* United States v. Voegele, 346 F.Supp. 7 (D. Mich.1972). Given the broad authority conferred by the statute, the court has no cause to consider whether the search exceeded the scope of the warrant, nor reason to pass upon any other basis for upholding the search.

## V

## RECORD-KEEPING REQUIRE-MENTS

█ Defendant claims that the record-keeping requirement of the Gun Control Act of 1968 violates his fifth amendment rights. He claims with respect to counts one and two of the indictment, selling a firearm to a minor, he was required, under penalty of law, to furnish the government, through the use of A.T.F. forms, information on which he was tried and convicted. This objection was not properly raised in the court below. Neither at the time of the introduction of the forms, nor upon motion to suppress, nor upon a motion for judgment of acquittal did the defendant claim that his fifth amendment privilege was being violated. Nor did the defendant urge below, and he has not urged here, that his failure to record at all the firearms charged in count eight is not punishable consistent with the fifth amendment.

It is the law in this circuit that except in extraordinary circumstances, Mar-

chetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (Brennan, J. concurring), and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968), require that the fifth amendment privilege be timely raised at trial as a condition to being asserted on appeal. United States v. Williams, 427 F.2d 1031 (9th Cir.) cert. denied, 400 U.S. 909, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970).

█ Moreover, in light of this court's concurrent sentencing doctrine, United States v. Moore, 452 F.2d 576 (9th Cir. 1971), since the defendant was validly found guilty of six other counts and received coextensive concurrent sentences on each count, it is not likely that counts one and two will have collateral consequences. The court declines to consider the effect of the privilege on the record-keeping requirement of 18 U.S.C. § 923(g) until the matter is timely raised and preserved for appeal.

Affirmed.