**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David CERRI, Defendant-Appellant.**

**No. 84–1564.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1984.

Decided Jan. 11, 1985.

Gillum Ferguson, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Patrick A. Tuite, Chicago, Ill., for defendant-appellant.

Before BAUER and POSNER, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

POSNER, Circuit Judge.

David Cerri was charged with federal firearms violations. After his motions to dismiss the indictment and to suppress evidence consisting of guns seized from his home were denied, he entered a plea of guilty under Fed.R.Crim.P. 11(a)(2) to two of the counts of the indictment, conditional on the failure of his appeal from the denial of his two motions. He was sentenced to a year and a day in prison, five years of probation, and a $1,000 fine.

The only witness at the suppression hearing was McKenzie, an undercover agent with the Treasury Department's Bureau of Alcohol, Tobacco and Firearms. He had been introduced to Cerri in a bar, where he had bought two pistols from him without displaying a firearm owner's identification card or filling out any of the forms required by federal or state law. He took delivery of the guns from Cerri's car. Cerri told McKenzie that he was a federally licensed gun dealer and in future transactions something would have to be done about forms. McKenzie said he would not sign anything, because he didn't want the guns traced back to him, and that he didn't have and wouldn't get a firearm owner's identification card in his own name (in fact McKenzie did have such a card) but could get one from "a black guy" (McKenzie is white). That would be "great," said Cerri. A month later McKenzie called Cerri and told him he had gotten the card and wanted to buy more guns. Cerri invited him to his

---

[*] Hon. William J. Campbell of the Northern District of Illinois, sitting by designation.

home and there sold him seven pistols, filling out the required information on the federal forms from the false firearm owner's identification card that McKenzie showed him and that had a photograph of a black man. Cerri signed the forms himself in the name of the mythical black man, since McKenzie refused to sign.

A month later McKenzie again came to Cerri's home to buy guns. Cerri offered to sell him 39 guns and quoted prices on each of them. McKenzie left on the pretext of going to his car to get money for the purchase and a list of the people he did business with, and Cerri said he would leave the door unlocked for his return. McKenzie returned shortly, all right—but with a raiding party of federal officers who, without a search warrant, went through Cerri's house, seized all the guns and business records found there, and took them away but did not arrest him. Cerri all this time was a federally licensed firearms dealer but his home was not the place of business listed on his license.

If McKenzie had seized guns and records in plain view in the part of the house to which Cerri had admitted him (the living room), no warrant would have been required; the agent would have been lawfully in a place in which evidence of crime was in plain view. Nor would it make a difference that for his own safety he seized the evidence with the assistance of other officers whom he brought with him, without Cerri's consent. *United States v. Janik*, 723 F.2d 537, 548 (7th Cir.1983). But the guns and records were in other rooms and no emergency required that those rooms be searched before a warrant could be obtained.

The only possible legal basis for the search is a statute dealing with inspection of the business premises of federally licensed firearm dealers, 18 U.S.C. § 923(g). After requiring that "each licensed importer, licensed manufacturer, licensed dealer, and licensed collector" maintain certain records "at such place, for such period, and in such form as the Secretary [of the Treasury] may be regulations prescribe" and

that the importers, etc. "shall make such records available for inspection at all reasonable times," the statute authorizes the Secretary to "enter during business hours the premises (including places of storage) of any firearms or ammunition importer, manufacturer, dealer, or collector for the purpose of inspecting or examining (1) any records or documents required to be kept ... and (2) any firearms or ammunition kept or stored ... at such premises." The Supreme Court held in *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), that this statute does not violate the Fourth Amendment.

■ The novelty here—we have found no similar case—is that the premises that the federal agents entered were not the premises from which the dealer was licensed to deal, but were instead the dealer's home. A man does not, simply by going into business as a gun dealer, so far surrender his privacy that government agents can barge into his home at will on · the off chance that he might be storing some of his guns or business records there. But on the other hand a gun dealer cannot escape the net of section 923(g) simply by moving his premises to a place different from the address on his license. See *United States v. Scherer*, 523 F.2d 371, 375 (7th Cir.1975); *United States v. Currier*, 621 F.2d 7, 9 (1st Cir.1980). If Cerri had moved his gun shop from 10 Main Street to 12 Main Street he would not be heard to argue that federal agents could not enter his new premises during business hours and inspect his guns and records without a warrant. The statute would be too easily evaded if such an argument were accepted.

■ What Cerri actually did was close enough to this hypothetical example to be controlled by it. He conducted his gun business not (or not exclusively) out of his licensed premises but instead out of his car and his home, and by doing so turned the car and the home into premises for selling guns. This made them places to which government agents had a right of access under the authority of section 923(g)—only during business hours, it is true, but the

authority was exercised during Cerri's business hours: indeed, while he was in the midst of conducting business.

 It cannot make a difference that Cerri chose to use his *home* as an alternative premises for engaging in the business of a gun dealer. When used as a place of business, the home has the same status under the Fourth Amendment as any other place of business. See *Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). And it cannot make a difference that the agents seized the records and guns rather than merely inspecting them. It was lawful for the agents to inspect the records and guns, and once they inspected them they knew from what McKenzie had told them that the records and the guns were evidence of crime, which being in plain view could be seized lawfully without a warrant. See *United States v. Biswell, supra,* 406 U.S. at 312, 317, 92 S.Ct. at 1594, 1597; *United States v. Wilbur,* 545 F.2d 764, 765 (1st Cir.1976); *United States v. Petrucci,* 486 F.2d 329, 332 (9th Cir.1973). Cerri's further argument that section 923(g) is inapplicable when the inspecting agents suspect criminal conduct is frivolous, implying as it does that the law abiding have fewer rights than criminals. See *United States v. Wilbur, supra,* 545 F.2d at 766.

The only thing that gives us slight pause is the question how much certitude the agents must have that the premises they are entering, though not listed on the dealer's license as his place of business, really are such. If probable cause to believe that they are business premises is ground enough for federal agents to enter a gun dealer's home without a warrant, then section 923(g) makes even greater inroads into the privacy of people engaged in the gun business than the Supreme Court thought in *Biswell.* We know from cases like *United States v. Karo,* —— U.S. ——, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530 (1984), and *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980), that the search of a home without a warrant violates the Fourth Amendment, even

if the search is otherwise reasonable, unless there is consent, or an emergency that makes it impossible to get a warrant; and neither exception to the requirement of a warrant was present here. McKenzie had consent to be in the living room—not to search the whole house. Maybe the sale of guns is so menacing to the public safety that Congress may compromise the principle of these cases, but it is not clear that it has tried to do this in section 923(g) or that the Fourth Amendment would allow it to succeed. But these are not questions we need answer in this case. McKenzie knew—he did not merely suspect—that Cerri was selling guns from his home (and doing so at the very moment when the agents entered)—knew with as much certainty as he knew the address on Cerri's license.

 So we think the search and the seizure were lawful and move on to the sufficiency of the indictment. Cerri says it was not clear enough to apprise him of the crime with which he was charged. This point is frivolous but there is a little more merit to his contention that the second count to which he (conditionally) pleaded guilty (Count 12) did not charge an offense. Section 922(b)(2) of the Criminal Code, on which this count is based, makes it a crime "for any licensed dealer ... to sell ... any firearm or ammunition to any person in any state where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law ...." Illinois law forbids the transfer of firearms to any person who does not display a firearm owner's identification card previously issued in his own name, Ill.Rev. Stat.1981, ch. 38, ¶ 83–3(a), while attempted violations of paragraph 83–3(a) are forbidden by the state's general attempt statute, Ill.Rev.Stat.1981, ch. 38, ¶ 8–4. Count 12 charges that Cerri "did knowingly sell and deliver" to McKenzie the 39 pistols that Cerri offered McKenzie on McKenzie's second visit to his home, in violation of the two sections of the Illinois firearms statute just cited, the violation consisting of Cerri's having "knowingly transferred and caused

to be transferred and attempted to transfer" the 39 pistols to McKenzie, who did not "display" a valid firearm owner's identification card issued in his name.

Cerri points out that a gun purchaser like McKenzie who has a valid firearm owner's identification card in his own name but does not display it commits no crime under Illinois law, and Cerri argues from this that he could not have violated 18 U.S.C. § 922(b)(2) since McKenzie's "purchase" did not violate Illinois law. But this argument is a *non sequitur*. The sale was illegal under paragraph 83–3(a) of the Illinois gun law because the card was not displayed, and therefore the purchase was also illegal. Sale and purchase are the same transaction looked at from the seller's and the buyer's side, respectively. It is true that Illinois law visits criminal sanctions for the illegal sale (or purchase) just on the seller. But it is common for statutes that punish trafficking in particular goods, such as narcotics or liquor or sex, to reserve criminal penalties for the dealer, regarding the purchaser as more victim than accomplice. See Perkins & Boyce, Criminal Law 734 (3d ed. 1982). The point is not that the purchase is not wrong; the purchase is wrong if the sale is wrong; the point is that the purchaser is a much lesser wrongdoer than the seller—maybe no wrongdoer.

■ Cerri also argues that in charging that his transaction with McKenzie violated the Illinois attempt statute, Count 12 charges no crime under 18 U.S.C. § 922(b)(2). It is true that section 922(b)(2) does not punish attempted sales of firearms, but since Count 12 charges that the sale was completed, the reference to attempt can be disregarded as harmless surplusage. See, e.g., *United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir.1974).

■ Cerri's last argument is that no completed sale was made, since McKenzie's raiding party interrupted the transaction before the guns were handed over to McKenzie or paid for. The case is in the wrong procedural posture for him to make such an argument. All that is before us is the lawfulness of the search and the sufficiency of the indictment, and Cerri cannot use evidence from the suppression hearing to argue that he did not commit the offense charged in the indictment. He pleaded guilty to Count 12, conditional only on the failure of his appeal from the district court's refusal to suppress evidence or dismiss the indictment; he has waived his right to contest the sufficiency of the government's evidence that he sold the 39 pistols to McKenzie.

■ Yet it does appear from the transcript of the hearing on the conditional guilty plea that the facts are as testified to in the suppression hearing: the guns were not handed over. And if we thought this meant that Cerri had pleaded guilty to an offense he could not have committed, we would hesitate to conclude that he had waived his right to complain. But we do not think it means this. From the evidence presented in the plea hearing it appears that the sale may have been completed in Cerri's home, before McKenzie left, ostensibly to get money to pay for the guns and a list of his customers (to find out how many more guns he might need) though actually to get the raiding party. Section 922(b)(2) punishes sale or delivery. The sale can be executory, and thus precede payment and delivery. There was a factual basis for concluding that this is what happened here; no more was necessary. See Fed.R.Crim.P. 11(f).

AFFIRMED.