**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Arnold R. LIMATOC,**
**Defendant-Appellee.**

No. 86–1127.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1986.

Decided Jan. 5, 1987.

Reinhardt, Circuit Judge, filed concurring opinion.

Eric L. Wilson, Robert J. Hackman, Asst. U.S. Attys., U.S. Atty's Office, Hawaii, Honolulu, Hawaii, for plaintiff-appellant.

Michael Weight, Honolulu, Hawaii, for defendant-appellee.

Before NELSON, REINHARDT and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

The United States appeals from the district court's order suppressing evidence. The government asserts that the district court erred in finding that Bureau of Alcohol, Tobacco and Firearms agents (ATF agents) could not conduct an administrative inspection of defendant Arnold Limatoc's firearms inventory and business records following the execution of a valid search warrant.

## I

Limatoc is a federally licensed firearms dealer who operates his firearms business from the bedroom of his home. On Tuesdays his hours of business are 4:00 p.m. to 9:00 p.m. On Tuesday, October 22, 1985, at approximately 2:00 p.m., two ATF agents entered Limatoc's premises to execute a search warrant for a 9mm machine pistol which they had reason to believe had been converted to an automatic-firing, machine gun-style weapon. This type of firearm must be registered, and the agency had no record of Limatoc having registered such a weapon.

An anonymous phone caller alerted Limatoc that someone was trying to break into his house. In response, he loaded an AR–15 rifle and proceeded to the front door. There, he saw ATF agents outside the door. He placed the weapon down inside the door and went outside to speak to the agents, who identified themselves and served him with the warrant. After reading the warrant, he escorted the agents inside the house.

Upon entering, Limatoc reached behind the door, picked up the AR–15 rifle, and unloaded it. Then he led the agents upstairs to his bedroom. Inside the bedroom, Limatoc placed the AR–15 rifle in a corner and directed the agents to the closet where he stored his firearms inventory. After producing a frame for the 9mm pistol, he explained to the agents that he had sold the

remaining parts described in the warrant. Because the frame by itself was legal, the agents returned it to him.

The agents discharged their obligations under the warrant by approximately 3:00 p.m. At about that time, but clearly prior to 4:00 p.m., one agent told Limatoc that he was going to examine Limatoc's business inventory and records. During this inspection of Limatoc's firearms inventory, the agent examined the AR–15 rifle and discovered that the gun had been modified to fire fully automatic. The agents seized the weapon and had Limatoc sign a statement.

Limatoc was indicted on two counts, both related to possession of the AR–15 as converted. He moved to suppress the evidence recovered by the agents. The district court suppressed the AR–15 on the grounds that it was the fruit of an illegal search, and, under the circumstances, could not be seized pursuant to an administrative inspection. The government then moved to reconsider, contending that an administrative inspection pursuant to 27 C.F.R. § 178.23 may accompany execution of a valid search warrant. The district court denied the motion.

## II

■ We have jurisdiction over the government's timely appeal pursuant to 18 U.S.C. § 3731. Generally, we review motions to suppress *de novo*. *See United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir.1986). While findings of fact made at a suppression hearing are upheld unless clearly erroneous, the ultimate issue of the lawfulness of a search presents a mixed question of law and fact that is reviewed *de novo*. *See United States v. Feldman*, 788 F.2d 544, 550 (9th Cir.1986).

## III

■ The ATF agents had a right to enter Limatoc's home pursuant to an admittedly valid search warrant. But it is clear that the agents discharged their obligations under the warrant by approximately 3:00 p.m., at which time neither the 9mm pistol specified in the warrant nor any other illegal weaponry had been spotted or seized.

The government, however, contends that it conducted a proper administrative inspection of Limatoc's premises under the auspices of 18 U.S.C. § 923(g). This statute, part of the Gun Control Act of 1968, authorizes the Secretary of the Treasury to conduct administrative inspections of firearms dealers' premises. The Secretary has delegated this inspection authority to any ATF officer via 27 C.F.R. § 178.23, which provides:

Any ATF officer may enter during business hours the premises, including places of storage, of any licensed dealer ... for the purpose of inspecting or examining any records or documents required to be kept by such ... dealer ..., and any firearms or ammunition kept or stored by such ... dealer ... at such premises.

■ Although the ATF agents were already lawfully on Limatoc's premises pursuant to a valid search warrant, we cannot say that they carried out an authorized administrative inspection. The statute requires that there be an entry during "business hours." The ATF agents had completely discharged their duties under the search warrant well before Limatoc's business hours began on that particular day. After the search warrant had been executed, but before the commencement of Limatoc's business hours, the ATF agents began what they later characterized as an administrative inspection. The statute and the regulation constitute a carefully defined exception to the fourth amendment, *see, e.g., United States v. Petrucci*, 486 F.2d 329, 332 (9th Cir.1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); *United States v. Cerri*, 753 F.2d 61, 63 (7th Cir.1985), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985), and both are explicit in their limitation of administrative inspections to "business hours." We believe this limitation means what it says. "Business hours" *means* business hours. The record reflects that on Tuesdays, Limatoc operates his business

from 4:00 p.m. to 9:00 p.m. These hours are listed on Limatoc's dealer application. It is evident that the ATF agents had completed their search under the warrant by approximately 3:00 p.m. At about that time, but clearly prior to 4:00 p.m., the agents began the administrative search that ultimately led to the seizure of the AR–15 rifle. We find no statutory basis for this particular administrative inspection.

 The government also asserts that the AR–15 rifle was validly seized as evidence in "plain view." The three requirements for a valid plain view seizure are: (1) there must be a legitimate prior justification for the officer's presence, (2) the discovery must be "inadvertent," and (3) it must be "immediately apparent to the police that they have evidence before them." *Coolidge v. New Hampshire*, 403 U.S. 443, 466–69, 91 S.Ct. 2022, 2038–40, 29 L.Ed.2d 564 (1971); *United States v. Chesher*, 678 F.2d 1353, 1356 (9th Cir.1982). We reject the plain view argument because at the time the ATF agents seized the rifle they had fully discharged their duties under the search warrant. There was no longer a legitimate justification for their presence. The ATF agents found nothing illegal during their search under the warrant. Although the AR–15 rifle may have been in plain view thereafter, it was not seized at a time when the agents had a right to be on Limatoc's premises.

### IV

Because we believe that the search warrant had been fully executed, and that the statute authorizing administrative inspections during business hours provides the only possible authority for the seizure of the AR–15 rifle, we are compelled to conclude that the seizure of the rifle was not authorized. Accordingly, the order of the district court granting Limatoc's motion to suppress is AFFIRMED.

REINHARDT, Circuit Judge, concurring:

I agree essentially with the majority's opinion and write separately only to comment additionally on 18 U.S.C. § 923(g).

In order to conduct an administrative inspection of a firearms dealer's business premises, the government must ordinarily rely, as it does here, on 18 U.S.C. § 923(g) and the implementing regulation. The statute and regulation authorize a search only when the agents enter the premises during business hours. Here, the agents entered well before that time. Thus, the statute and regulations, on their face, do not authorize the agents' subsequent conduct.

Had the agents' search conducted under the search warrant pursuant to their lawful entry lasted past the commencement of business hours, it could be argued that it would be pointless to require them to leave the premises and reenter immediately in order to conduct an administrative inspection. No such argument can be made here, however. Having completed their lawful business under the search warrant well before the start of business hours, there was no justification for the agents remaining on the premises or conducting an administrative inspection during non-business hours.

The government's argument that the agents were on the premises lawfully, while relevant to its "plain view" theory, does not serve to bring their activities within the purview of 18 U.S.C. § 923(g). The statute authorizes searches only when agents enter during business hours, not whenever agents happen to be on the premises for other reasons. While it may be possible to construe the statute as authorizing the performance of administrative inspections when agents are already lawfully on the premises at the time business hours commence, it is not possible to reasonably construe it as authorizing agents to conduct inspections whenever they are able to gain lawful entry to the premises. The construction proposed by the government would leave little, if anything, of the business hours requirement.