**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald P. BROWN,
Defendant–Appellant.**

**No. 88–2694.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1989.

Decided March 30, 1989.

Robert N. Meyeroff, Milwaukee, Wis., for defendant-appellant.

Francis D. Schmitz, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Donald Brown appeals his conviction and the sentence imposed upon him in the Eastern District of Wisconsin[1] following his guilty plea to one count in an indictment charging him with violating 18 U.S.C. § 1343, the federal wire fraud statute. Brown argues that he is entitled to a trial, or alternatively resentencing, because: (1) the magistrate conditioned continuing bail on Brown's acceptance of an attorney not of his choice in violation of Federal Rule of Criminal Procedure 44(a); (2) the district court erred when it denied his motion to sever his scheduled trial from that of his codefendant; (3) he was not afforded a sufficient opportunity to review and object to the presentencing report, and the district judge failed to make a finding of inaccuracies or explicitly refused to disregard portions that Brown argues were erroneous; (4) there was insufficient evidence to warrant restitution of $230,000 as imposed. Finding no merit in Brown's arguments, we affirm the judgment of conviction.

## I. FACTUAL BACKGROUND AND PROCEEDINGS BELOW

Donald Brown and codefendant Robert Lynch were indicted on September 22, 1987. The indictment consisted of eleven counts, of which two charged Brown, and was premised upon a scheme to defraud the Community Bank of De Pere, Wisconsin. As described in the indictment, Brown was working for the Heli–Skimmer Corporation, a Colorado company located in San Diego, California, which developed watercraft technology. Brown was trying to raise capital to support Heli–Skimmer's planned expansion to Brown County, Wisconsin. At the same time, his acquaintance and codefendant Lynch represented a group of wealthy Minnesota investors, known collectively as El Cortez, interested in investing in a Las Vegas, Nevada, hotel.

According to the indictment, from July 1982 through June 1983 Brown and Lynch devised a scheme to defraud the Community Bank. Ostensibly on behalf of El Cortez, Lynch applied for various loans from the Community Bank and in support of the application presented forged documents to the bank. The documents fraudulently represented that El Cortez would guarantee the loans, the proceeds of which purportedly were to be used by El Cortez to invest in Heli–Skimmer's future Brown County plant. Lynch also assured the president of Community Bank that Al Ross, reportedly an investment adviser to the Teamsters Union, was working on a loan from the Teamsters to Heli–Skimmer. In reality, Al Ross was an alias for Brown, who had no connection whatsoever with the Teamsters but yet in later meetings falsely assured the bank president that the Teamsters would be working with Heli–Skimmer and were prepared to lend it $1.4 million.[2]

Based on the fraudulent representations, the Community Bank approved the loan application and gave Lynch a letter of credit for the benefit of El Cortez. Lynch subsequently used the letter of credit as collateral for a loan from Heli–Skimmer's bank in La Jolla, California, and later caused the Community Bank to wire monies to the California bank, all under the pretense that the funds were being used by El Cortez to invest in Heli–Skimmer's proposed Brown County plant. The scheme was furthered by Brown's assurances—under the alias Al Ross, investment advisor to the Teamsters Union—to the Community Bank president that the Teamsters were investing in the project as well. All to-

---

1. The case was originally assigned to Judge Warren, but was reassigned to Judge Gordon in 1988.

2. In fact the Minnesota Teamsters Public and Law Enforcement Employees Union, Local 320, had previously declined Brown's invitation to invest in Heli–Skimmer's proposed Brown County plant (R. Item 1).

taled, the Community Bank lost nearly $1.2 million as a result of the scheme.

Brown, along with Lynch, was arraigned on October 16, 1987. Count two of the indictment alleged that around December 10, 1982, Lynch and Brown caused the Community Bank to wire $75,000 to the California bank; count three alleged that around May 2, 1983, the pair caused the Community Bank to wire $230,000 to the California bank. Brown was allowed to remain free on bond, his travel restricted to Wisconsin, where he was to be tried, and Florida, where he was then residing. The magistrate set forth a briefing schedule, requiring pretrial motions to be filed by October 26, 1987, and scheduled the trial for December 7, 1987. A second hearing was held and, due to the volume of discovery and the complexity of the charges, the motion deadline was extended to November 2, 1987, and the trial continued until March 7, 1988. Throughout this time no appearance of counsel had been filed on Brown's behalf, although he had informed the magistrate that he would be retaining counsel.

On December 10, 1987, the magistrate held a status conference, the primary purpose of which was to determine what progress Brown had made in retaining counsel. The magistrate reminded Brown of his previous statements that he would retain counsel and emphasized the importance of counsel in a case as complex as this, as well as the significance of the Speedy Trial Act. Brown acknowledged financial difficulty in retaining the counsel of his choice, but expressed some optimism that the financial hurdle would soon be cleared. Rather than wait further for Brown to act, the magistrate instead decided to confine him to the Eastern District of Wisconsin until he retained counsel. Not coincidentally, the magistrate also recommended an attorney known by the court to be competent and available that afternoon, and told Brown that the magistrate would be willing to appoint the recommended attorney that same day. Brown met with that attorney and the magistrate did in fact appoint him as counsel that day; consequently, Brown was free to return to Florida later that same day.

Prior to trial, Brown's appointed counsel moved the district court for, among other things, a continuance and severance of Brown's trial from that of codefendant Lynch. The court granted the continuance but denied the motion for severance without prejudice and with leave to refile at a later time. Brown's counsel did not refile the motion for severance.

Brown ultimately entered into a plea agreement with the government. Brown pleaded guilty to count three of the indictment, which alleged that he and Lynch defrauded the Community Bank of $230,000. During the entry of plea, the government made its offer of proof to which Brown objected as to two minor points.[3] The plea was accepted by the district court, which found a sufficient factual basis for it. Sentencing was scheduled for August 18, 1988; in the meantime a presentence report was to be prepared in consideration of sentencing.

During sentencing, in response to questioning from Judge Gordon, both Brown and his attorney said that they had seen the presentence report and that there was no reason to forestall sentencing. Neither Brown nor his counsel objected to any factual statements contained in the presentence report; the one objection raised by Brown's attorney concerned an excerpt from a Minnesota newspaper which was read aloud by the government during the sentencing hearing.[4] The court then sen

---

**3.** Brown objected to the government's assertion that he used the alias Al Ross, but not to any of the activities in which Brown engaged. He simply stated that he did not need or use an alias to defraud the Community Bank. Brown also objected to the government's assertion that he associated with reputed criminals. The court concluded that neither matter undercut the basis for Brown's guilty plea. (May 17, 1988, Tr. at 29.)

**4.** The newspaper excerpt quoted the judge in a previous case in which Brown was a criminal defendant. Brown's attorney complained that the judge in that case was mistaken as to facts germane to the case and that consequently, the judge's unflattering remarks about Brown were

tenced Brown to four years' imprisonment and restitution in the amount of $230,000.

## II. APPEAL TO SET ASIDE GUILTY PLEA

 Although he pleaded guilty to the crime charged, Brown complains that errors below entitle him to a trial. Specifically, Brown argues that he was coerced to accept appointed counsel, and his pretrial motion for severance of his trial from his codefendant's was incorrectly denied. Once a plea of guilty has been entered, non-jurisdictional challenges to the constitutionality of the conviction are waived and only the knowing and voluntary nature of the plea may be attacked. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763. Accordingly, in contrast to Brown's argument, we may not remand this case for a trial unless Brown is able to first show that his plea of guilty lacked the knowing and voluntary predicate base, since neither of his arguments for a trial attack the district court's jurisdiction over the case.

### A. Right to Counsel of Choice

 Brown first argues that he was denied his choice of counsel. Although criminal defendants do not have an absolute right to counsel of their choice, see *United States v. Ely,* 719 F.2d 902 (7th Cir.1983), neither are defendants required to accept counsel chosen and appointed by the trial court. Federal Rule of Criminal Procedure 44(a), which is a restatement of existing law under the Sixth Amendment, entitles a criminal defendant unable to obtain counsel to court-appointed counsel unless he waives such appointment.

Brown argues that he was coerced to accept counsel other than by his own choosing as a result of the status conference in which Magistrate Robert L. Bittner ordered him to remain in the Eastern District of Wisconsin until he was represented by counsel. This supposedly amounted to a violation of Federal Rule of Criminal Procedure 44(a) and the Bail Reform Act of 1984 because an illegitimate condition was attached to his original bail. According to Brown, the magistrate's action coerced him to accept court-appointed counsel, since he lacked housing and funds to stay in Wisconsin and was prohibited by the magistrate from returning to his home in Florida. Although it may have been an abuse of discretion for the magistrate to attach such a condition to his prior bail,[5] there is not a hint of evidence to suggest that this impacted upon Brown's later decision to plead guilty.

Brown had assured the magistrate during his October 16, 1987, arraignment that he would retain counsel, and thereafter had continued to assure court officers of that intention. Yet on December 10, the date of the status hearing, three days after his trial was originally scheduled to begin and after the filing deadline for pretrial motions, had passed, Brown still was not represented by counsel. Were it not for motions filed by his codefendant's counsel, the trial likely would have begun as scheduled. The following exchange then took place:

[Magistrate Bittner]: * * * So the first question I pose to you is, once again,

---

not necessarily accurate. Judge Gordon overruled the objection.

5. While generally it is not appropriate to attach the acceptance of a court-appointed counsel as a condition to continued bail, the magistrate's actions were harmless in this instance. Since a defendant has a right to waive appointment of counsel, even if he is unable to obtain counsel on his own, bail or restrictions thereon typically should not be conditioned on the defendant's willingness to forego rights pertaining to counsel. Of course the magistrate was within his right to condition bail on factors which may impact upon the policy considerations of the Bail Reform Act, 18 U.S.C. § 3142, which con-

ceivably could militate in favor of requiring a criminal defendant, who has waived his right to proceed pro se, to retain counsel. Here, however, the magistrate apparently conditioned the continuance of bail on Brown's retention of counsel in order to ensure a fair and orderly trial. Although laudable in spirit, such concerns do not have comparable roots in the Bail Reform Act, which is primarily concerned with assuring that the criminal defendant appears before the court. As with some of Brown's other claims, however, this issue has long since been waived and did not impact upon his decision to plead guilty.

what is the status of your being represented by counsel?

[Brown]: Your Honor, I talked to Mr. Lyons this morning, who I hoped to be my counsel * * *.

I would like to apologize to the Court that—if I have seemed not negligent, but its on my mind a hundred percent. And I have felt that when the continuance came out that I got in the mail, that I thought that I had time, you know, to do it, and so forth. And apparently, I'm not understanding the necessity to have an attorney so quickly. I probably—the Court has, I certainly see, justification to be concerned. But I would like to state, you know, that I am as on top of it as I can be, and one way or another I will have counsel next week.

[The Magistrate]: Well, that's not good enough, Mr. Brown. The Court's been too indulgent. We brought you up * * * from Florida, and it seems the only way to have this matter resolved is to make sure you stay in this district until such time counsel for you has made an appearance in this Court * * *. Once that occurs, then I'll allow you to return to Florida.

\* \* \* \* \* \*

[N]ow, I have available a counsel in the name of an attorney named Robert N. Meyeroff * * *. He's in his office this afternoon, and the Court is prepared to— he's available. This Court knows him to be a competent attorney. And the Court will appoint him * * *.

(December 10, 1987, Tr. at 3–5). The magistrate was obviously concerned that the integrity of the trial, which was sure to involve complex legal arguments and stratagems, would be at stake were Brown ignorantly to proceed to trial still without legal counsel, or if Brown was finally able to retain counsel, it may have been at such a late date that he would thereafter be handicapped.

Rule 44(a) guarantees to a criminal defendant the right to an attorney if he is unable to obtain one. The facts before the magistrate suggested that Brown was unable to obtain an attorney—he had repeatedly failed in his efforts to retain an attorney and had on file a financial statement which suggested that he lacked the wherewithal to do so. Consequently, Magistrate Bittner suggested a capable attorney and later that same day made the appointment. Nothing impeded Brown from later retaining another counsel and seeking substitution. Indeed, the magistrate told Brown that same afternoon that counsel, once appointed, would remain until excused by the court or "till there is substituted counsel" (December 10, 1987, Tr. at 5). Clearly, the magistrate's order should properly be assessed as a temporary remedy to ensure that Brown's rights were not impaired until he was able to retain preferred counsel. Brown has failed to show that the appointment of counsel, with the opportunity to substitute other counsel later, somehow affected the knowing and voluntary nature of his guilty plea.

Moreover, the magistrate's concerns certainly have been borne out. Brown never retained the attorney he had planned to retain; the counsel appointed by the court remains his counsel here on appeal. At no point did Brown ever attempt to substitute counsel. Finally, Brown does not claim that he received ineffective assistance of counsel, which would be a valid basis for claiming that his guilty plea was not knowing and voluntary. See *Wofford v. Wainwright,* 748 F.2d 1505 (11th Cir.1984). Consequently, his claim that he was denied his choice of counsel in no way casts doubt on the knowing and voluntary nature behind his guilty plea and must be deemed waived.

### B. Denial of Severance Motion

■ Brown complains that the district court's denial of his motion to sever his trial from that of codefendant Lynch was error. By failing to renew his motion and then pleading guilty, Brown waived his opportunity to appeal this matter.

Brown filed a motion for severance, along with other motions, on February 10, 1988, nearly three months after the November 2, 1987, deadline for pretrial motions. Also, the magistrate filed his recommendations as to various pretrial matters

with Judge Warren on January 28, 1988. The parties were instructed to file objections to the magistrate's recommendations within ten days; the government responded with objections while Brown remained silent. Consequently, Judge Warren denied Brown's pretrial motions for untimeliness, but he did so without prejudice and with leave to refile with explanation for the untimeliness.

■ A motion for severance is typically waived if it is not renewed at the close of evidence, primarily because it is then that any prejudice which may have resulted from the joint trial would be ascertainable. See, *e.g., United States v. Guess,* 745 F.2d 1286, 1289 (9th Cir.1984), certiorari denied, 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d 360; *United States v. Coronel–Quintana,* 752 F.2d 1284, 1288 (8th Cir.1985), certiorari denied, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54; *United States v. Swift,* 809 F.2d 320, 323 (6th Cir.1987); *United States v. Free,* 841 F.2d 321, 324 (9th Cir.1988), certiorari denied, — U.S. —, 108 S.Ct. 2042, 100 L.Ed.2d 626. However, when the defendant is able to show that refiling the motion would be useless, he may be excused from engaging in what is then a futile exercise. *United States v. Kaplan,* 554 F.2d 958 (9th Cir.1977), certiorari denied, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315. In *Kaplan,* the district judge clearly informed the defendant that any attempt to seek severance would be "useless." *Id.* at 965. But here the district judge merely denied the motion with leave to refile. If in fact refiling would have been useless, the court would not have invited refiling. Moreover, Brown cannot attribute the denial of his motion for severance entirely on the notion that he was appointed counsel after the deadline for pretrial motions, since the record reflects that Brown's motion was filed in February 1988, over two months after counsel was appointed, and he had counsel when the magistrate's recommendations were filed, yet chose not to object then.

■ Finally, by pleading guilty Brown has waived all contentions with respect to the denial of the motion to sever. A guilty plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195. While a motion for severance is granted to avoid the taint of prejudice which may occur when two or more defendants are joined in the same trial, that concern is simply erased when a defendant pleads guilty. If the trial should have proceeded separately, Brown should have gone to trial and renewed his motion then, at which time the prejudice would be apparent and identifiable and not a mere potentiality. Alternatively, Brown could have attempted to plead guilty conditionally while pursuing an objection to the joined trial, as is often the case when a motion to suppress evidence is denied. *E.g., United States v. Cerri,* 753 F.2d 61, 65 (7th Cir.1985), certiorari denied, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614. But instead Brown pleaded guilty unconditionally, thereby relinquishing any claim he may have had with respect to the denial of the motion to suppress.

## III. APPEAL FOR RESENTENCING

### A. Time for Reviewing Presentence Report

■ Brown argues that he had insufficient time within which to review the presentencing report. The presentencing report was prepared in Minneapolis, where Brown was then residing, but, according to Brown, he was never informed of its completion. Brown maintains that he was not shown the presentence report until four minutes prior to sentencing, thus offending Federal Rule of Criminal Procedure 32(a)(1)(A), which provides that the defendant and his counsel shall have an opportunity to read and discuss the presentence report.

Brown cites cases from this Circuit, such as *United States v. Rone,* 743 F.2d 1169 (7th Cir.1984), in which this Court has underscored the importance of ensuring that each individual, prior to sentencing, has had the opportunity to review the presentence report. On this point there is no

room for debate; indeed, the government agrees with Brown's assertion that a scant four minutes to review a presentence report would violate Rule 32(a)(1)(A). However, the government challenges the factual predicate underlying Brown's complaint.

At the very start of the August 18, 1988, sentencing hearing, Judge Gordon asked Brown and his counsel individually whether each had read the report and had the opportunity to discuss its contents with the other and then asked if either had any objections to the report. Both stated they had read the report and discussed its contents, and that neither had any objections to its factual accuracy. Finally, before continuing with sentencing, Judge Gordon asked Brown whether there was any reason why sentencing should not proceed, to which Brown responded there was not. Thus by all indications arising from the sentencing hearing, neither Brown nor his counsel harbored any reservations relative to their preparedness insofar as the presentence report was concerned.

While the sentencing hearing is persuasive in its own right, it need not be relied upon as dispositive in and of itself. On the Presentence Investigation Notification, a cover sheet which explains the presentence report and requests information pertaining to the date a party was given a copy of the presentence report, a notation was made by the Probation Office that the presentence report was mailed to Brown on August 9, 1988, and to Brown's counsel on August 10, 1988. Moreover, further down on the same sheet, Brown's counsel checked two boxes indicating: (1) he had "read and [understood] this notice," and (2) he had "read the presentence investigation report." Brown's counsel then signed and dated the Notification; the date reads August 11, 1988, a week before the sentencing hearing. Brown also signed the Notification, although his signature was not dated. The Notification coupled with the transcript from the sentencing hearing presents dispositive evidence that Brown was accorded sufficient time to review the presentence report. As a consequence of our determination that he did in fact have an opportunity to review and discuss the presentence report with his attorney, he was required to object at the sentencing hearing if the presentence report contained any inaccuracies. This Brown and his attorney failed to do. Instead, each stated at the sentencing hearing that neither of them had any objections as to the factual accuracy of the report. Moreover, none of the objections Brown now raises, even if true, merits resentencing.

■ Federal Rule of Criminal Procedure 32(c)(3)(D) protects a convicted criminal defendant's due process guarantee of fair sentencing by requiring the sentencing judge to make a clear record of all challenges to the factual accuracy of the presentence report and also note the degree of consideration the sentencing judge has attached to the challenged facts. See *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir.1986); see also *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984). In order to be resentenced under Rule 32(c)(3)(D) the defendant must show that: (1) the allegations of the inaccuracy were before the sentencing judge, and (2) the sentencing judge failed to make findings regarding the controverted matters or a determination that the disputed information would not be considered in sentencing. *Eschweiler*, 782 F.2d 1385, 1389; *United States v. Perez*, 858 F.2d 1272, 1276–1277 (7th Cir.1988).

■ Brown did not object to anything in the presentence report. He did lodge a single objection to statements made by the prosecuting attorney during the sentencing hearing; that objection concerned a quote from a newspaper which may have been inaccurate and is not in issue here on appeal. Yet Brown now argues that there exist three factual inaccuracies which—though unchallenged before the sentencing judge [6]—should have been chronicled by

---

**6.** Although in a headnote in his brief Brown argues that "[t]he presentence report contained factual inaccuracies, the defendant objected to

said factual inaccuracies and the trial court failed to either make a finding to said factual inaccuracies or state that the inaccuracies com-

him. Citing *Rone*, Brown argues that the district court was required either to ignore these disputed facts or make a finding of fact for the record.

As for Brown's contentions that the district court did not make a finding of fact as to which side's version it believed, *Rone* obviously only requires this when the facts are in dispute. In contrast to *Rone*, Brown never offered the district court an opportunity to articulate its belief because Brown never disputed these characterizations until after sentence, when he was filing motions for post-sentence relief. Thus the district court had not even a sense that the government's contentions were in dispute.

Brown has failed to raise a doubt regarding the factual accuracy of the prosecutor's remarks at the sentencing hearing. Brown complains that the government falsely stated that "the crimes in question, the scheme as a whole, and the particular crime which the defendant is pleading to here today, or has pled and is being sentenced for, occurred before May 10th of 1983 when he was finally released from parole on the charges he had been convicted on in Minnesota" (Aug. 18, 1988, Tr. at 11). In contrast to his silence at the sentencing hearing, Brown now argues that he was discharged from parole "at the end of 1982" (Reply Br. 1). Additionally, Brown contends the prosecuting attorney also inferred or stated that Brown was a professional con man and that he had connections with organized crime, both of which Brown asserts are not true.

■ As for the latter two remarks of the Assistant United States Attorney, there were certainly enough objective facts to support them. From the presentence report alone, one could easily conclude that Brown was a professional con man. And links between Brown and organized crime figures were documented; Brown only argues that these individuals were ac-

quainted with Heli–Skimmer before Brown, at most an insignificant distinction. As for the remark that Brown was still on parole when he committed the crime for which he was then being sentenced, it is not entirely clear whether the prosecuting attorney was referring to the May 2, 1983, transaction alleged in count three, or to the entire pendency of the scheme as described in the indictment. Count three realleged paragraphs 1 through 8 of the indictment and therefore reached back to July 1982 when Brown was admittedly still on parole. Furthermore while the prosecuting attorney was perhaps in error with respect to the date of Brown's earlier discharge from parole, taken in context, the error was at best insignificant and certainly harmless.

### B. Restitution Order

■ Lastly, Brown challenges the order of restitution in the amount of $230,000, for which, like the other bases for this appeal, there was no objection below. Brown argues that he only received $30,800 or thereabouts as fruit of the crime and that the order for restitution should be limited accordingly. His brief also submits for the first time and without supporting citation to the record that the Community Bank took a security interest in certain assets of Heli–Skimmer. Accordingly, Brown urges this Court to reduce the amount of restitution by that amorphous amount.

This argument, like the others preceding it, is without merit. "The statutory measure of damages is the amount of loss an aggrieved party actually suffered." *United States v. Lynch*, 699 F.2d 839, 845 (7th Cir.1982). Brown pleaded guilty to count three which listed the Bank's loss as $230,-000. In the presentence report and at sentencing the government argued the loss to the Community Bank was $230,000 and asked for restitution in that amount, with-

---

plained of would be disregarded when determining the sentence of the defendant" (Br. 4), Brown fails to disclose in his argument when he objected. While Brown offers citations to the record which reflect alleged factual misstatements by the prosecuting attorney, he fails to do the same with respect to his objections. Indeed,

our review of the record failed to disclose a single objection to the matters now alleged to be in error. He did object to these matters in a post-judgment motion for relief, but that was well after sentence and appears to be the first time he so objected.

out objection by Brown. As for any security interests the Community Bank may have in the Heli–Skimmer Corporation, it is not clear how much of the debt, if any, is secured. In any event, it is not our prerogative to force the Community Bank to pursue a security interest born of fraud, and perhaps worthless, for the benefit of the defrauding party.

## IV. CONCLUSION

Brown's arguments for a trial are without merit since his complaints were waived by his decision to plead guilty, and he has failed to show that the purported errors invalidated the knowing and voluntary nature of his plea. Similarly, his arguments for resentencing are not only factually and legally in error, but were also waived. Accordingly, the judgment of conviction is affirmed.