### UNITED STATES of America

### v.

### Kuang Hsung J. CHUANG, a/k/a "Joseph Chuang," a/k/a "Dr. Chuang," and Theresa Shieh, a/k/a "Jing Jai Shieh," Defendants.

### No. SS 87 Cr. 440 (MGC).

United States District Court,
S.D. New York.

Sept. 20, 1988.

## OPINION

CEDARBAUM, District Judge.

Defendant Chuang has moved pursuant to Fed.R.Crim.P. 12(b)(3) to suppress the evidence resulting from a warrantless search of his office.[1] This search of the offices of the president of a bank and his secretary was performed by the receiver of the bank. The offices were also used by the bank president to run a law firm that was located inside the bank building. For the reasons discussed below, defendant's motion to suppress is denied.

## BACKGROUND

Defendant Joseph Chuang was the chairman, president and chief executive officer of the Golden Pacific National Bank ("Bank"). On June 21, 1985, as a result of an examination by the Office of the Comptroller of the Currency, the Bank was closed and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. This suppression motion stems from the FDIC's search of the offices of Chuang and his secretary, which were also used by Chuang to run a law firm. An evidentiary hearing was held on certain aspects of this motion on March 9, 1988. In addition, a number of affidavits have been filed.

The law firm, Chuang & Associates, was a sole proprietorship owned by Chuang. The law firm was located on the third floor of the Bank building in the Chinatown section of Manhattan. The rest of at least the first four floors of the building was occupied exclusively by the Bank. Chuang and his secretary had their offices, in which they performed both Bank and law firm work, on the third floor, where a Bank telecommunications room was also located. The rest of the third floor served as office space for the law firm. Chuang's third-floor office was the only office he used as operating head of the Bank.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City by Herve Gouraige, Asst. U.S. Atty., for U.S.

Orans, Elsen & Lupert, New York City by Leslie A. Lupert, Clement J. Colucci, III, for defendant Chuang.

Fischetti & Pomerantz, New York City by Mark F. Pomerantz, Warren L. Feldman, for defendant Shieh.

---

1. Defendant Shieh's office, located on a different floor of the building in which both defendants worked, is not at issue on this motion. Nor does she have "standing" to move to suppress the evidence taken from Chuang's office, since she had no expectation of privacy in his office.

Chuang & Associates consisted of Chuang himself, three other attorneys, and a paralegal or law clerk. The firm was listed in the telephone directory and in the Martindale–Hubbell law firm directory, and advertised in Chinese-language publications. The Bank was a major client of Chuang & Associates, but the firm had a number of other clients as well, and the Government concedes that it had an existence separate from the Bank. Transcript of Evidentiary Hearing ("Tr.") at 74.

The relationship between the firm and the Bank was an extremely close one. At the main entrance to the firm on the third floor near the elevator was a large wood sign marked "Chuang & Associates, Attorney [sic] at Law." Chuang's office and the firm were also accessible via an interior staircase from the Bank, which made it easy to travel between the firm and the Bank's offices on the first, second and fourth floors. There was no sign to identify the law firm when it was entered this way. Nor was there a sign or directory at the entrance to the building, in the lobby or in the elevator identifying the law firm as an entity separate from the Bank. The law firm apparently shared telephone lines with the Bank. There is no evidence that there was any formal lease arrangement between the Bank and the firm in 1985. In a one-year lease in effect during the calendar year 1984 the firm subleased space on the third floor from the Bank at a below-market rate. The Bank also paid the salaries of all secretaries at the firm. In exchange, the firm charged the Bank lower rates than it charged other clients.

The FDIC secured the Bank building on the evening of Friday, June 21, 1985. The following day, a Saturday, large numbers of FDIC employees entered the building to begin the extensive process of examining bank documents and calculating assets and liabilities. Ellen Stuart, an FDIC attorney who was responsible for assessing pending legal matters involving the Bank, testified that she entered the law firm offices on June 22 through the interior stairway. She said that she never saw the "Chuang & Associates" sign that day.

Edward G. Miller, an attorney working at Chuang & Associates, testified that when he arrived for work on Monday, June 24, he informed the FDIC that Chuang & Associates was a law firm separate from the Bank. Although Stuart testified that the FDIC took note of the attorneys' claims, and later those of the Bank's lawyers, that Chuang & Associates was a separate law firm, she was skeptical of the claims at the time because of the shared telephone lines, the easy access to the Bank and the absence of any building directory listing the firm.

Chuang & Associates kept its law firm files in the office of Chuang's secretary, as well as in other offices and secretarial and open areas on the third floor. Chuang and the Government agree that Chuang's office and that of his secretary were searched by the FDIC during the week of June 24, and this motion only addresses evidence obtained as a result of the search of those offices. Defendants and the Government are looking into the question of whether any of the Government's evidence stems from a search of other areas of the law firm. Therefore, I do not now address the suppression motion insofar as it concerns areas of the law firm other than the offices of Chuang and his secretary.

## DISCUSSION

In searching the premises of the Bank, the FDIC did not obtain a search warrant or seek court approval of any kind. Rather, it acted pursuant to its statutory duty to marshal the assets of the Bank and to wind up the Bank's affairs. 12 U.S.C. § 1821(d). Chuang contends that the FDIC's search of his office and that of his secretary violated the Fourth Amendment because the FDIC was on notice by Monday, June 24 that the offices were part of a law firm. He argues that a warrantless search of a law firm—even if the law firm is intermingled with another entity that can legitimately be searched without a warrant —violates the Fourth Amendment.[2] The

2. In his memorandum in support of the suppression motion, Chuang briefly argues that

Government, in response, contends that under these circumstances no warrant was required.

■ It is well established that, "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352–53, 97 S.Ct. 619, 628–29, 50 L.Ed.2d 530 (1977), quoting *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967); *see New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 747, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring in the judgment). It has been noted that searches of documents present special dangers of intrusions upon privacy, *Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976) (upholding search, with warrant, of law office), and that "a law office search should be executed with special care to avoid unnecessary intrusion on attorney-client communications." *National City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir.1980); *see* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.1(g) (2d ed. 1987).

There is nothing to suggest that any such special care was taken by the FDIC in searching the offices of Chuang and his secretary. Nor has the Government argued that the urgency of searching these offices was so great that obtaining a warrant would have been impractical. Nevertheless, two factors suggest that the search was not unreasonable, in violation of the Fourth Amendment, despite the absence of a warrant. First, the offices of Chuang and his secretary, in addition to being part of the law firm, were also an important part of the Bank. Bank business in addition to law firm business was carried on there. The expectation of privacy in commercial property is "particularly attenuated" where the property is used in "closely regulated" businesses, *New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987), such as national banks.[3] Thus, by operating his law firm out of the same offices from which he ran the Bank, Chuang voluntarily reduced the expectation of privacy in the firm's premises that he might have enjoyed had the firm been located elsewhere.

Second, it is not disputed that, as in *United States v. Gordon*, 655 F.2d 478 (2d Cir.1981), a case involving a receiver for an insurance business, the FDIC as a receiver standing in the shoes of the Bank had authority to look through all of the Bank's premises and papers without a warrant. Chuang makes no claim that such a search, which was carried out for business purposes, violated his privacy interests in his office. *See O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (work-related searches of employees' offices, desks and files are judged by reasonableness standard and are not presumptively invalid without a warrant). He contends only that, even if the FDIC had authority to search Bank premises and documents, it had no authority to search Bank premises that it had been told were also used as part of a law firm.[4] But since the FDIC as receiver had authority to inspect Bank property, and the offices of Chuang and his secretary were Bank property used in running the Bank, the force of Chuang's argument concerning the unreasonableness of searching those offices is diminished. *See National City Trading*, 635 F.2d at 1024 (where space used by business subject to search is also used by law office, space is

---

suppression is required because of the Government's alleged failure promptly to prepare an inventory of all the documents seized from the law firm. Memorandum in Support of Defendants' Motion for Suppression at 19–20. However, the evidence concerning this legal contention has not been developed, and defendants did not mention it in their letter to the Court dated May 2, 1988 listing the legal questions to be decided.

3. In another suppression motion in this case, defendants have not contested that banking is a closely regulated industry.

4. A somewhat analogous question was left unresolved in *Gordon* for failure to develop an adequate factual record in the district court. 655 F.2d at 484.

properly subject to search for books and papers of the business).

Faced with these circumstances, Chuang argues that any warrantless search of a law office—even under the facts of this case—is *per se* unreasonable absent exigent circumstances. His argument is based almost entirely on *National City Trading*. In that case, the Second Circuit upheld a search, executed with a warrant, of the offices of a commodity fraud "boiler-room" operation that was run out of a lawyer's suite of offices. As in this case, the space used by the law office and the boiler-room operation was "commingled." 635 F.2d at 1024. The Second Circuit held the search not unreasonable, noting that warrants may be issued to search law offices upon a proper showing of cause and emphasizing the commingling of the activities of the boiler-room operation and of the law office. *Id.* at 1025–26. However, the Court did stress that a law office search "should be executed with special care." *Id.* at 1026. The Court pointed with approval to the "self-regulatory care" exercised by the Government in planning and executing the search. *Id.* An FBI agent and an Assistant United States Attorney had explained to the searching agents the need to avoid any disruption of the law practice or any seizure of documents unrelated to the boiler-room operation. Closed file cabinets in the lawyer's office had not been examined. The lawyer's office had not been searched until the lawyer was present. A legal file concerning the boiler-room operation had been taken but had been sealed without having been inspected. And, of course, a search warrant had been obtained. Chuang urges that where such measures are not taken, or at least where no warrant is procured, a law office search cannot be upheld. The Fourth Amendment prohibition against "unreasonable searches" does not lend itself to *per se* rules. But, in any event, such a rule does not apply in this case.

In *Gordon,* the New York State Superintendent of Insurance was appointed receiver by a state court judge after an insurance business had been abandoned and the Superintendent had met the statutory requirement of showing that property would be removed from the state, or would be lost, injured or destroyed. 655 F.2d at 483–84. As receiver, the Superintendent had the statutory power, *inter alia,* "to take and hold real and personal property." *Id.* at 483 n. 2. Similarly, in this case the FDIC was appointed receiver pursuant to statute after the Office of the Comptroller of the Currency had made a determination that the Bank was insolvent. 12 U.S.C. §§ 191, 1821(c). As receiver, the FDIC had the power and the duty to marshal the Bank's assets and to wind up its affairs. 12 U.S.C. § 1821(d); *Federal Deposit Insurance Corp. v. Hatmaker,* 756 F.2d 34, 36 n. 2 (6th Cir.1985). In his concurring opinion in *Gordon,* Judge Oakes wrote that the Superintendent was, "when acting by virtue of his receivership powers, in effect acting as with a warrant issued upon a showing of probable cause." 655 F.2d at 487 (Oakes, J., concurring). Reading Judge Oakes's concurrence in *Gordon* together with *National City Trading* suggests that the search at issue here was permissible. If a warrantless search by a receiver is equivalent to a search with a warrant, and if a search of a law office with a warrant is permissible where the law office is commingled with a business that is the legitimate object of the search, then the warrantless search of a law office by a receiver is permissible where the law office is commingled with the business for which the receiver has been appointed.

The primary danger that courts and commentators have seen in law office searches lies in the disclosure to the Government of documents that are covered by the attorney-client and the attorney work-product privileges.[5] *See, e.g., Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955, 960–61 (3rd Cir.1984) (finding unconstitutionally overbroad a warrant authorizing a search

---

**5.** Where a law firm represents criminal defendants, the Sixth Amendment right to counsel may also be implicated by a law office search. *See, e.g., O'Connor v. Johnson,* 287 N.W.2d 400, 404 (Minn.1979) (en banc). There is no evidence in the record that Chuang & Associates represented criminal defendants.

of a law firm); *O'Connor v. Johnson*, 287 N.W.2d 400 (Minn.1979) (en banc) (establishing *per se* rule that searches of law offices are impermissible where the attorney is not suspected of a crime and there is no threat that documents sought will be destroyed); Bloom, *The Law Office Search: An Emerging Problem and Some Suggested Solutions*, 69 Georgetown L.J. 1, 12–23 (1980). In *National City Trading*, addressing an argument that the warrant was insufficiently particular because it authorized seizure of privileged documents, the Second Circuit stated that "[t]o the extent that the files obtained here were privileged, the remedy is suppression and return of the documents in question, not invalidation of the search." 635 F.2d at 1026 (citations omitted). By the same logic, the fact that a search involved privileged documents does not render the entire search unreasonable, at least where there was good reason to believe that documents that could legitimately be searched would be found. Neither Chuang nor any third parties have sought to suppress individual documents seized by the FDIC on the ground that they are privileged.

Finally, the Government relies on *United States v. Cerri*, 753 F.2d 61 (7th Cir.), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). In *Cerri*, the defendant was selling firearms from his home, although the home was not the place of business from which he was licensed to sell. Acting pursuant to a statute permitting inspection of the business premises of federally-licensed firearms dealers, federal agents entered the defendant's house without a warrant and seized his guns and business records. The Seventh Circuit upheld the search. It held first that a firearms dealer could not evade the warrantless inspections provided for by the statute simply by moving to an address different from the one on his license. 753 F.2d at 63. That the search was of a home did not alter that conclusion, despite the fact that a warrantless search of a home absent exigent circumstances generally constitutes a *per se* violation of the Fourth Amendment, *see United States v. Karo*, 468 U.S. 705, 714–15, 104 S.Ct. 3296, 3302–03, 82 L.Ed.2d 530

(1984), because a home used as a place of business occupies the same status for Fourth Amendment purposes as does any other place of business. 753 F.2d at 64, citing *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). *National City Trading* noted that, for Fourth Amendment purposes, "there is nothing more sacred about a law office used for business purposes ... than there is about the premises of a newspaper." 635 F.2d at 1025. Similarly, there is nothing more sacred about a law office used for business purposes than there is about a home used for business purposes. That a home may be searched under these circumstances without a warrant suggests the same conclusion about a law office.

■ Defendants have also moved to suppress certain records because of alleged violations of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422. I need not decide whether any violation of the Act took place, because even if it did, suppression is not a remedy authorized by the Act, 12 U.S.C. § 3417, or appropriately imposed in the exercise of the Court's supervisory powers. *United States v. Kington*, 801 F.2d 733, 737 & n. 1 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 495 (1987); *United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir.), *cert. denied*, 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986); *United States v. Whitty*, 688 F.Supp. 48 (D.Me.1988); *United States v. Lee*, 667 F.Supp. 1404, 1419 (D.Colo.1987).

### CONCLUSION

Defendants' motion to suppress evidence obtained as a result of the FDIC's search of the offices of defendant Chuang and his secretary is denied.

SO ORDERED.