**UNITED STATES of America, Appellee,**

v.

**Kuang Hsung J. CHUANG, a/k/a "Joseph Chuang", Appellant.**

**No. 692, Docket Nos. 89–1309, 89–1406.**

United States Court of Appeals, Second Circuit.

Argued Feb. 7, 1990.

Decided Feb. 28, 1990.

Herve Gouraige, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Martin Klotz, and Kerri M. Bartlett, Asst. U.S. Attys., on the brief) for appellee U.S.

Robert S. Litt, Washington, D.C. (Bruce S. Oliver, Elena Kagan, and Williams & Connolly, Washington, D.C., on the brief) for appellant Kuang Hsung J. Chuang.

Before TIMBERS, NEWMAN and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Kuang Hsung J. Chuang appeals from a judgment of conviction entered August 1, 1989, in the Southern District of New York, Miriam Goldman Cedarbaum, *District Judge*, 696 F.Supp. 910, upon a jury verdict on twenty-two counts, including misapplication of bank funds, making false statements to bank regulatory officials, other substantive counts, and conspiracy. The district court denied Chuang's pretrial motions to supress evidence obtained from warrantless searches of his bank and law offices.

On appeal, we find that the chief claim of error raised by Chuang is that the district court erred in denying his suppression motions. Other claims of error have been raised and considered.

For the reasons which follow, we affirm the judgment of conviction.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Chuang was the chairman, president and chief executive officer of the Golden Pacific National Bank ("GPNB"). On June 17, 1985, after receiving information from an informant about certain activities at GPNB, the Office of the Comptroller of the Currency ("OCC") began a warrantless examination, pursuant to 12 U.S.C. § 481 (1988), of bank records pertaining to the sale of a bank product known as "non-negotiable certificates." GPNB received no prior notice of this examination.

At about 1 P.M. on June 17, three bank examiners from the OCC entered GPNB in Manhattan and went to Chuang's office on the third floor of the six-story bank building. They produced an administrative subpoena and requested Chuang to provide

documents related to the non-negotiable certificate program. In response to their request, Chuang instructed Theresa Shieh, a vice-president and cashier at GPNB, to produce the requested documents. It is undisputed that virtually all the documents reviewed by OCC examiners came from Shieh's office located on the fourth floor of the bank building; that no documents came from Chuang's office; that these documents were bank documents, not personal documents belonging to Shieh or Chuang; and that virtually all of the documents were given to the OCC upon request.

As a result of this examination, which lasted until June 21, the OCC examiners concluded that the sale of the non-negotiable certificates was fraudulent, and that Chuang had misrepresented to regulatory officials facts concerning the certificates and the use of bank funds derived from the sale of those certificates. They discovered that several hundred non-negotiable certificate customers had approximately $17 million in claims against GPNB. Not satisfied with the evidence concerning the assets underlying those liabilities, the OCC declined Chuang's request to liquidate the assets. The OCC determined that GPNB was insolvent and, on June 21, 1985, appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver.

The FDIC secured the bank building on the evening of Friday, June 21. The next day, it began the extensive process of examining bank documents and calculating assets and liabilities. A law firm, Chuang & Associates, owned by Chuang, was located on the third floor of the bank building. As part of its examination of GPNB, the FDIC searched the third floor offices of Chuang and his secretary where they performed both bank and law firm work.

On May 19, 1987, Chuang was indicted, together with Shieh, in a 48–count indictment. Prior to trial, defendants moved to dismiss the indictment on various grounds, including duplicity and failure to state an offense. They also moved to suppress the evidence obtained by the OCC during its warrantless examination of GPNB and evidence obtained by the FDIC during its warrantless examination of the offices of Chuang and his secretary. The district court denied these motions.

Prior to trial, two superseding indictments were returned and several counts were severed. At the close of the government's case, several counts were dismissed by the district court. The case was submitted to the jury on twenty-two counts. Count One charged Chuang and Shieh with conspiring to defraud the United States, to misapply bank funds, and to make false statements to bank regulatory officials and agencies, in violation of 18 U.S.C. § 371 (1988). Counts Two through Eleven charged both defendants with making false statements and concealing bank deposits from bank regulatory agencies, in violation of 18 U.S.C. § 1001 (1988). Counts Twelve through Fourteen charged both defendants with making false statements to bank regulatory officials and agencies, in violation of 18 U.S.C. § 1001. Counts Fifteen through Twenty charged both defendants with misapplication of bank funds, in violation of 18 U.S.C. § 656 (1988). Count Twenty–One charged Chuang with conspiracy to cover up illegal campaign contributions made with bank funds, in violation of 18 U.S.C. § 371. Count Twenty–Two charged both defendants with wire fraud, in violation of 18 U.S.C. § 1343 (1988).

The essence of the government's case was that defendants defrauded bank customers by selling ordinary certificates of deposit called "non-negotiable certificates"; that they diverted the funds received to personal businesses without informing the customers or GPNB's board of directors and without insuring the funds with the FDIC; and that they misrepresented the facts regarding the non-negotiable certificate program to bank regulatory officials.

The jury trial began on September 26, 1988 and concluded on January 18, 1989, when the jury returned guilty verdicts against both defendants on all 22 counts. On June 1, 1989, the district court sentenced Chuang to concurrent five year terms of imprisonment on all counts. On August 1, 1989, the court ordered Chuang to comply fully with all the terms of a

settlement agreement with the FDIC and to make restitution of $200,000.

This appeal by Chuang followed.

## II.

Chuang's chief claim of error centers upon two discreet searches made respectively by the OCC and the FDIC.

We turn first to the propriety of the district court's order denying the motion to suppress documents obtained by the OCC's warrantless search.

■ In his motion to suppress bank documents obtained by the OCC during its June 1985 examination of GPNB pursuant to 12 U.S.C. § 481 (1988), Chuang asserted that the examination violated the Fourth Amendment. Specifically, he claimed that § 481, which authorizes warrantless examinations of national banks, is unconstitutional on the ground that it does not provide "a constitutionally adequate substitute for a warrant", as required by the Supreme Court in *New York v. Burger*, 482 U.S. 691, 703 (1987). Observing that none of the documents inspected by the OCC was obtained from Chuang's office, the district court ruled that Chuang lacked standing to challenge the OCC's examination of GPNB. Chuang asserts that the district court erred in this determination. He renews on appeal his claim that § 481 is unconstitutional. We need not address the merits of this constitutional challenge since we agree with the district court that Chuang has not established a legitimate expectation of privacy in the bank documents examined by the OCC.

In reviewing the district court's determination that Chuang lacked standing, we are mindful that the Supreme Court has dispensed with the notion of standing as being theoretically distinct from the substantive merits of a Fourth Amendment claim. *Rakas v. Illinois*, 439 U.S. 128, 133, 140 (1978). In *Rakas*, the Court concluded that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of stand-

ing." *Id.* at 139. Put another way, the proper inquiry turns on whether "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140.

■ With *Rakas* in mind, we focus on whether defendant has established a legitimate expectation of privacy in the area searched. *United States v. Rahme*, 813 F.2d 31, 34 (2 Cir.1987); *United States v. Smith*, 621 F.2d 483, 486 (2 Cir.1980), *cert. denied*, 449 U.S. 1086 (1981); *United States v. Brien*, 617 F.2d 299, 305 (1 Cir.), *cert. denied*, 446 U.S. 919 (1980). This threshold question involves two separate inquiries: first, Chuang must demonstrate a subjective expectation of privacy in a searched place or item; and second, his expectation must be one that society accepts as reasonable. *United States v. Paulino*, 850 F.2d 93, 97 (2 Cir.1988), *cert. denied*, 109 S.Ct. 1967 (1989).

■ It is well-settled that a corporate officer or employee in certain circumstances may assert a reasonable expectation of privacy in his corporate office, and may have standing with respect to searches of corporate premises and records. *See, e.g.*, *United States v. Leary*, 846 F.2d 592, 595–96 (10 Cir.1988); *United States v. Brien*, *supra*, 617 F.2d at 305–06; *United States v. Lefkowitz*, 464 F.Supp. 227, 230–31 (C.D. Cal.1979), *aff'd*, 618 F.2d 1313 (9 Cir.), *cert. denied*, 449 U.S. 824 (1980); *see also Mancusi v. DeForte*, 392 U.S. 364, 369 (1968) ("one has standing to object to a search of his office, as well as of his home"). The question whether a corporate officer has a reasonable expectation of privacy to challenge a search of business premises focuses principally on whether he has made a sufficient showing of a possessory or proprietary interest in the area searched. *E.g.*, *United States v. Brien*, *supra*, 617 F.2d at 305–06; *United States v. Lefkowitz*, *supra*, 464 F.Supp. at 230–31. Moreover, he must demonstrate a sufficient "nexus between the area searched and [his own] work space." *United States v. Britt*, 508 F.2d 1052, 1056 (5 Cir.), *cert. denied*, 423 U.S. 825 (1975). The presence of these

factors necessarily must be determined on a case-by-case basis. *Cf. O'Connor v. Ortega,* 480 U.S. 709, 718 (1987) ("Given the great variety of work environments in the public sector, the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.").

Chuang asserts that, as a corporate officer of the bank, he established a sufficient expectation of privacy in the bank premises to dispute the legality of OCC's examination. He claims that he had a significant proprietary interest in the bank, since he or his family owned almost half of all outstanding bank stock at the time the bank was closed. He also claims that he exercised significant operational control over the bank and all of its premises, and that the areas searched were non-public areas over which ultimate control rested in his hands. Further, he points out that he was present during OCC's examination of the bank. In view of the context in which OCC conducted its search, however, we hold that these factors were insufficient to establish a cognizable Fourth Amendment claim.

We observe that the bulk of the bank documents produced for the OCC were obtained from the office of another officer of the bank, Theresa Shieh. Her office was located on the fourth floor of the bank building. None of the documents came from Chuang's office on the third floor. Chuang failed to demonstrate a sufficient nexus between the areas from which the documents were obtained and his own office. Moreover, all of the documents examined were bank documents subject to periodic examinations by the OCC, which has a statutory duty under § 481 to examine the affairs of every national bank at least twice a year. 12 C.F.R. § 4.11 (1989). Under these circumstances, we are not convinced that Chuang demonstrated even a subjective desire to keep the bank documents private.

Moreover, even assuming Chuang demonstrated a subjective expectation of privacy, we cannot conclude that that expectation is one society considers reasonable. The Supreme Court has held that the "expectation [of privacy] is particularly attenuated in commercial property employed in 'closely regulated' industries." *New York v. Burger, supra,* 482 U.S. at 700; *see also O'Connor v. Ortega, supra,* 480 U.S. at 717 ("[p]ublic employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of . . . legitimate regulation"). Indeed, the Court has held that "[c]ertain industries have such a history of government oversight that *no* reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 313 (1978) (emphasis added) (citing *Katz v. United States,* 389 U.S. 347, 351–52 (1967)); *see also O'Connor v. Ortega, supra,* 480 U.S. at 718 ("some government offices may be so open to fellow employees or the public that *no* expectation of privacy is reasonable") (emphasis added).

In view of the pervasive nature of federal regulation of the banking industry, Chuang, as an officer of the bank, knew that bank documents, whether kept in his office or another office, were subject to periodic examination by the OCC. The existence of a regulatory scheme necessarily reduces a bank officer's expectation of privacy in his corporate office. *New York v. Burger, supra,* 482 U.S. at 700; *O'Connor v. Ortega, supra,* 480 U.S. at 717. That privacy interest is attenuated to the point where any warrantless examination of his office pursuant to a regulatory scheme may be reasonable within the meaning of the Fourth Amendment. *New York v. Burger, supra,* 482 U.S. at 702. This is not to say that Chuang had *no* legitimate expectation of privacy in his own office so as to deprive him of standing to challenge a search of that office. He still could reasonably expect that no one other than fellow employees and business or personal invitees would enter his office, and that nothing would be removed from his desk or file cabinets without his permission. *Mancusi v. Forte, supra,* 392 U.S. at 369.

The bank documents examined by the OCC, however, were obtained from areas of the bank other than Chuang's office.

Virtually all of them came from Shieh's office. In view of the heavily regulated nature of the banking industry, we decline to accept Chuang's assertion that he had standing to challenge the legality of the examination of those documents. The fact that Chuang, as an officer of a national bank, knew those documents were subject to periodic examination by the OCC, coupled with the fact that they were found in areas other than Chuang's office, lead us to conclude that Chuang's Fourth Amendment rights were not infringed by the OCC examination.

We do not suggest that, since banking is a heavily regulated industry, no bank officer ever can have a reasonable expectation of privacy in bank documents, and therefore that no bank officer ever can challenge successfully an examination of the bank pursuant to § 481. Under the circumstances of the instant case, however, where the heavily regulated nature of the banking industry diminished a bank officer's expectation of privacy in bank documents, and where those documents were obtained from areas of the bank *other* than the officer's own office, we decline to accept any privacy interest as objectively reasonable.

We hold that Chuang cannot successfully challenge the legality of OCC's examination of GPNB because he has not demonstrated a sufficient privacy interest in bank documents, not found in his office, that he knew were routinely subject to OCC examination.

### III.

This brings us to the propriety of the district court's order denying the motion to suppress documents obtained by the FDIC's June 1985 warrantless search of the offices of Chuang and his secretary. *United States v. Chuang,* 696 F.Supp. 910 (S.D.N.Y.1988).

Although the FDIC did not obtain a search warrant or seek court approval of any kind, Chuang does not challenge the authority of the FDIC, as a properly appointed receiver of GPNB pursuant to 12 U.S.C. § 1821(d) (1988), to examine the bank itself without a warrant. He asserts, however, that his office and that of his secretary were part of his law firm, Chuang & Associates, and that the FDIC's search of those "independent law offices" went beyond any lawful authority of a receiver. We disagree.

█ The district court found that, based on the physical lay-out of GPNB and its close relationship to the law firm, the offices of Chuang and his secretary were "an important part of the Bank", where not only law firm business but also banking business was conducted. 696 F.Supp. at 913. The court correctly concluded, since banking is a "closely regulated" business, that Chuang voluntarily reduced the expectation of privacy in the firm's premises by operating his law firm out of the same offices from which he ran GPNB. *Id.* (citing *New York v. Burger, supra,* 482 U.S. at 700).

█ Moreover, the FDIC, as a properly appointed receiver of GPNB, had the power and duty pursuant to § 1821(d) to marshal GPNB's assets and to wind up its affairs. As Chuang concedes, the FDIC as receiver stood in the shoes of GPNB and had authority to look through all of GPNB's premises and papers without a warrant. *See United States v. Gordon,* 655 F.2d 478, 487 (2 Cir.1981) (Oakes, J., concurring) (when the Superintendent of Insurance acts "by virtue of his receivership powers, [he is] in effect acting as with a warrant issued upon a showing of probable cause"). We have upheld a search of a law office with a warrant as reasonable where the law office is commingled with a business that is the legitimate object of the search. *National City Trading Corp. v. United States,* 635 F.2d 1020, 1024–26 (2 Cir.1980). Since the area searched by the FDIC clearly functioned as a mixed-use bank and law office for Chuang, and since the FDIC as receiver may properly search GPNB without a warrant, we agree with the district court that the FDIC search was reasonable.

█ We find no merit to Chuang's assertion that the FDIC had no probable cause to believe that Chuang's office and his sec-

retary's office were used for GPNB business. *United States v. Cerri,* 753 F.2d 61, 62–64 (7 Cir.), *cert. denied,* 472 U.S. 1017 (1985) (warrantless search of home is permissible based on probable cause that it was used for business purposes). The physical lay-out of the bank building, including the shared telephone lines of GPNB and the firm, the easy access to GPNB from the firm, and the absence of any building directory listing the firm, clearly suggested a commingling of space. Moreover, the office searched was Chuang's only office in the entire bank building. These factors constituted sufficient cause for the FDIC to believe that there was a commingling of activities in the area searched.

We hold that the district court properly denied Chuang's motion to suppress the evidence obtained by the FDIC in its search of the offices of Chuang and his secretary. In reaching this conclusion, we are mindful of the risk posed by searches of law offices which unnecessarily may intrude on attorney-client privileges. *E.g., National City Trading Corp. v. United States, supra,* 635 F.2d at 1026 ("a law office search should be executed with special care"). That risk, however, was not present here since neither Chuang nor any third parties sought to suppress documents on the ground that they were privileged. *United States v. Chuang, supra,* 696 F.Supp. at 915. Moreover, since there was sufficient cause to believe that the law offices of Chuang and his secretary were commingled with bank business, the FDIC's search of those offices was proper. *National City Trading Corp. v. United States, supra,* 635 F.2d at 1026.

One further matter: Chuang claims that liquor license applications, which showed that his wife owned an interest in two restaurants, were found during a search by the FDIC of the office of one of his law associates and were introduced improperly at trial. According to Chuang, they were integral to the government's proof as to the bank misapplication counts. The government maintains that those applications were obtained from the New York State Liquor Control Authority ("Liquor Authority"), rather than from Chuang's

law offices. Indeed, it asserts that no files containing liquor license documents were found during the FDIC search. At trial, liquor license applications submitted to the Liquor Authority were introduced. The district court accepted the government's claim that the actual documents offered were obtained from the Liquor Authority. Since the government denies that the source of those liquor license applications was derived from the FDIC search, and denies that any copies of those documents were found during that search, we decline to disturb the district court's determination, absent any evidence to support Chuang's claim.

### IV.

Chuang raises numerous other claims of error, contending that: (1) the court erred in denying his motion to sever the campaign contribution count; (2) the court erred in denying his motion to suppress the false statement counts on the ground of duplicity; (3) the government failed to plead and prove bank misapplication; (4) the evidence was legally insufficient to establish wire fraud; (5) the court improperly admitted hearsay evidence; (6) the court improperly instructed the jury on the definition of bank "deposits"; and (7) he was improperly sentenced.

We have considered carefully these contentions and hold that none has merit.

### V.

To summarize:

We hold that the district court properly denied Chuang's motion to suppress the evidence obtained from the OCC's examination of GPNB. We also hold that the court properly denied Chuang's motion to suppress evidence obtained from the FDIC's search of his office and that of his secretary. We have considered carefully Chuang's other claims of error and find that none has merit.

Affirmed.