UNITED STATES of America,
Plaintiff,

v.

Richard J. BLI and James
E. Bli, Defendants.

No. 99–20061–BC.

United States District Court,
E.D. Michigan,
Northern Division.

May 1, 2001.

Janet L. Parker, U.S. Attys. Office, Bay City, MI, for Plaintiff.

Thomas W. Cranmer, Bloomfield Hills, MI, for Richard Bli.

George C. Bush, Saginaw, MI, for James Bli.

### OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE

LAWSON, District Judge.

The defendants in this case, Richard J. Bli and James E. Bli, brothers, are charged in a five-count indictment with various crimes relating to a crop insurance

fraud scheme alleged to have been perpetrated from 1989 through October 1998. The defendant, Richard J. Bli, has filed a motion to suppress evidence obtained during the execution of a search warrant at the Bli Farms office and the defendant's home on October 19, 1998. Defendant James E. Bli has joined in the motion. The defendants contend that the search warrant affidavit did not establish probable cause to justify issuance of the warrant, and that the search warrant itself did not specify the items to be seized with requisite particularity, rendering it a general warrant prohibited by the Fourth Amendment.

The government filed an answer which failed to address the merits of the defendants' motion [1] but instead contends that the defendants do not have "standing" to challenge the search. Defendant Richard Bli responded to the government's answer with an affidavit outlining his claim to a legitimate expectation of privacy in the office and residence searched. Defendant James Bli has not replied to the government's answer.

Because the Court finds that the search warrant was properly issued, and it adequately described the place to be searched and the items to be seized, the Court will deny Richard Bli's motion to suppress. The Court will deny James Bli's joinder in the motion to suppress because he failed to demonstrate a legitimate expectation of privacy in the place searched or the items seized.

I.

Defendants Richard and James Bli are partners with other family members in Bli Farms. Bli Farms grows potatoes and other crops on farms owned or leased in Bay, Saginaw and Tuscola Counties in mid-Michigan. The government contends that Bli Farms is a major potato producer and also serves as a broker for other producers of potatoes.

The government alleges that the defendants defrauded the United States Department of Agriculture (USDA) by making false statements to obtain payment for fraudulent disaster loan and crop insurance claims over several years through 1996. It is the government's theory that the defendants regularly reported inaccurately high crop yields for the purpose of obtaining a large emergency disaster loan from the Farm Service Agency, formerly known as the Farmer's Home Administration. During the same periods, the defendants allegedly under-reported crop production when making crop insurance claims to the Federal Crop Insurance Corporation and other insurance companies subsidized by the USDA.

On October 19, 1998, special agent Bruce Erlandson of the Office of Inspector General (OIG) for the USDA signed an affidavit and application for a search warrant which was issued the same day for a variety of documents and other items located at 101 Ridge Road in Bay City, Michigan. In the search warrant affidavit, Erlandson recited his extensive experience as an agent for the Office of Inspector General investigating crimes relating to the USDA, and his participation in the execution of over 100 search warrants in USDA investigations.

---

1. E.D. Mich. LR 7.1(d)(1)(B), applicable to criminal cases by operation of LCrR 12.1, requires a party to respond to a motion to suppress within 21 days after service of the motion. In its response in this case, the government attempted to reserve the right to file additional briefs to address the merits of the motion and other issues. No party has a right to bifurcate its response to a motion, and a party's decision to leave a material issue unaddressed is made at its peril.

The affidavit recited that Bli Farms had made crop insurance claims each year from 1991 through 1997, unlike other farming businesses in the area. Erlandson also attested that he had gathered and examined several boxes full of documents relating to Bli Farms operations, including records in which Richard Bli reported the production of potatoes and other crops for Bli Farms for the relevant period. Erlandson then summarized the amount of production which Richard Bli reported for disaster loan purposes, and also the production totals which he had reported at other times for the same period in making crop insurance claims. The amounts varied significantly.

The search warrant affidavit then recites the following averments:

6. All totaled, Bli Farms had received approximately $1,700,000 in crop insurance proceeds between 1991 and 1996, over $1,476,000 of which was based on claimed potato losses. The disaster loan made by Farm Service Agency, based on Richard Bli's certification on Bli Farm's behalf, closed in May of 1998. The amount of the loan was $500,000.

7. Efforts have been made to document sales of potatoes by Bli Farms by obtaining records from various potato marketing outlets. The weigh tickets and other records obtained so far indicate that yet another set of numbers can be derived for Bli Farm's potato sales for each year, especially if all marketing outlets used by Bli Farms could be identified. The marketing outlet information obtained so far generally indicates sales to market which are larger than those reported by Richard Bli for crop insurance purposes and lower than those reported for purposes of the Farm Service Agency loan application.

8. Based on my training and experience, I submit that records maintained on the premises at Bli Farms contain information regarding the actual production rates of potatoes and other crops grown by Bli Farms between 1991 and the present. While a substantial quantity of information has already been collected, conflicts in the information might be resolved by obtaining complete information from the records of Bli Farms. Based on my training and experience, I submit that the types of records which a business such as Bli Farms would maintain, and which would be useful in determining what certifications made on behalf of Bli Farms, if any, are false or explainable, include but are not limited to: all receipts from purchases of production-related items such as seeds, fertilizers, pesticides, herbicides, packaging materials (including bags, string, etc.), fuels and equipment; records relating to brokerage activities; leases of farm land; weigh tickets and other records indicating produce delivered to marketing outlets and the identities of those outlets; records relating to the trucking of produce to those markets; correspondence, memoranda, notes, messages (including telephone logs, e-mail, etc.); all documents relating to all loans sought, whether from commercial or governmental lenders; all records, permits, licenses, and related documentation, for all activities subject to governmental regulation, including but not limited to all records required by the Michigan Potato Commission and similar organizations relating to other crops; all certification records for all crops; all tax returns and related documentation for Bli Farms and the Bli family members; all crop insurance related records;

payroll records; bank and other financial account records; spread sheets; telephone bills (which typically in my experience reflect calls to markets to arrange for sales), telephone numbers, address books, and personal planners, in my experience, many of the types of records maintained by a business such as Bli Farms are maintained electronically on devices such as computers, answering machines, pagers and even electronic personal planners. Access to all of the data on such devices can often only be gained by means of passwords and similar security devices, making it necessary to seize both the hardware and the software so that an expert capable of unlocking all of the information stored electronically can work on the project. Therefore, I submit that all electronic data storage devices, including all computers, disks, printers, etc., are subject to seizure as repositories of relevant information.

9.  Based on my investigation I am aware that the headquarters of Bli Farms is located at 101 Ridge Road in Bay City, Michigan and includes a one story brick ranch-style home with an attached two car garage and a gazebo in the back yard; a white or light grey trailer with a flat roof, wood deck and wooden front steps; and numerous farms outbuildings. The same address is used apparently as the business address and the residence address for Richard Bli and Charlotte Bli (Richard's mother). I have personally observed desks and computers in the white or grey trailer. Based on my training and experience, including visits to many farms in connection with numerous investigations, it is common for records to be kept in multiple places on large farm properties like Bli Farms. For example, it is common for a production facility such as a bagging operation to contain a small office with records relating to that facility's operations. It is also common for relevant records to be kept in the residence, particularly where, as in the case of Bli Farms, the business is owned and operated by people who lived on the property from which the business is operated. In addition, I have observed semi and other "over the road" trucks on the Bli Farms property. Therefore, I submit that there is probable cause to search the above described house, trailer, farm out buildings, and "over the road" trucks for records as described above. I request that a search warrant for 101 Ridge Road in Bay City, Michigan be issued.

The search warrant was executed on October 22, 1998. According to OIG Agent Thomas Ackerman, who testified at the evidentiary hearing conducted by this Court, a small number of documents were seized from the farm house on the property, and approximately 40 bankers boxes of documents were seized from a building on the premises described as a house trailer, or single-wide mobile home, which served as the office for Bli Farms.

The government introduced in evidence at the hearing the documents seized from the house, which consisted for the most part of personal income tax records of Charlotte Bli, Richard's mother, but also included a contract with the USDA to participate in price support programs, which contract was signed by Richard Bli as agent for Bli Farms. The government introduced none of the documents seized from the office, nor did the defendants. The defendants offered no evidence at the hearing at all.

Prior to the hearing, but after the government had filed its answer to the defendant's motion in which the government challenged the defendant's standing, Richard Bli filed an affidavit in which he averred:

1. I am the Defendant in the above-entitled case and make this affidavit in support of the "Motion to Suppress" previously filed.

2. I reside at 101 Ridge Road in Bay City, Michigan. I have resided at this address my entire life. On October 22, 1998, as well as at the present time, I resided at the house located on this property with my mother, Charlotte Bli.

3. On October 22, 1998 my home, located at 101 Ridge Road, Bay City, and my office, located at 103 Ridge Road, Bay City, Michigan, were subjected to a search by federal officers. I was in the office at the time the officers arrived and remained on the premises throughout the search conducted by the officers.

4. The office that was searched is located at 103 Ridge Road, Bay City, Michigan. It was used by Bli Farms to conduct the farming operation that includes land on Ridge Road as well as other farm land. Bli Farms is a partnership between myself and my brother, James E. Bli. Persons who regularly used the office were James E. Bli, Pearl R. Bli, James E. Bli, Jr., William Bli, and myself. Other persons would be in the office only it invited by, and accompanied by, one or more of the above named persons.

5. The voluminous documents seized on October 22, 1998 included documents of Bli Farms and Bli family members individually. They were owned, possessed and controlled by myself and the other Bli family members named in this affidavit. Many of them had been prepared by me or at my direction. They were not open for inspection by anyone expect by permission of a Bli family member.

Defendant James Bli did not offer any submission concerning his connection to the premises either before, during or after the hearing. Rather, James chose to rely on Richard's affidavit and the testimony of Agent Ackerman with respect to the description of the farm office.

## II.

The "rights assured by the Fourth Amendment are personal rights, [which] ... may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), quoted in *Rakas v. Ill.*, 439 U.S. 128, 138, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Consequently, the defendants must carry the burden of establishing that their own Fourth Amendment rights were violated. *Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. 421. To do so, the defendants must show (1) that they had a subjective expectation of privacy in the premises that were searched or the items that were seized, and (2) that society is prepared to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *United States v. King*, 227 F.3d 732, 743–44 (6th Cir.2000). *See also United States v. Delgado*, 121 F.Supp.2d 631, 636 (E.D.Mich.2000). The records seized from the Bli Farm offices are, presumably, business records of Bli Farms. The defendants are agents of that partnership. The Court of Appeals for the Sixth Circuit has held that in some instances, corporate officers are not aggrieved by an unlawful search of their corporate offices in which

business records are seized. For instance, in *United States v. Mohney*, 949 F.2d 1397 (6th Cir.1991), the Court held that the defendant did not have standing to challenge the search of the corporate headquarters of a corporation which the defendant had organized as part of a complex corporate structure in which he ran several "adult entertainment" operations through several business structures. The Court noted that "it is hard to see how Mohney could have a reasonable expectation of privacy in documents he claimed to be completely uninvolved in preparing and which were kept in offices he claimed to rarely visit." *Id.* at 1404.

In that case, however, the Court acknowledged that in some circumstances "an officer of a corporation may be a 'person aggrieved' by a corporate search and seizure and thus have standing to challenge the search." *Id.* at 1403. *See also United States v. Chuang*, 897 F.2d 646, 649 (2d Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990) ("It is well settled that a corporate officer or employee in certain circumstances may assert a reasonable expectation of privacy in his corporate office, and may have standing with respect to searches of corporate premises and records.")

There is no question that Richard Bli had a subjective expectation of privacy in the business office of his family farm operations. He stated in his affidavit that persons other than family members "would be in the office only if invited by, and accompanied by," those family members involved in the farm operations, and that the documents that were seized "were not open for inspection by anyone except by permission of a Bli family member." Affidavit of Richard J. Bli, ¶¶ 4, 5. The remaining question, then, is whether society would accept this expectation as reasonable.

■ There are many factors which the Court may consider in determining whether a business owner's subjective expectation of privacy in business records is reasonable. In *United States v. Chuang*, *supra*, the Second Circuit directed the Court to "focus[ ] principally on whether [a business agent] has made a sufficient showing of a possessory or proprietary interest in the area searched.... Moreover, he must demonstrate a sufficient 'nexus between the area searched and [his own] work space.' " 897 F.2d at 649 (citations omitted). However, "[n]o one circumstance is talismanic" to this inquiry, *United States v. Haydel*, 649 F.2d 1152, 1154 (5th Cir.1981), and "property rights are neither the beginning nor the end of [the] inquiry." *United States v. Salvucci*, 448 U.S. 83, 91, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Pertinent factors also include "whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *Haydel*, 649 F.2d at 1155. *See also King*, 227 F.3d at 744.

■ In this case, the evidence shows that the Bli Farms business office was located in a single-wide house trailer structure located on the same premises as Richard Bli's residence. Although members of the public apparently came and went from the office, there is no evidence that non-Bli family members were permitted to rummage through file cabinets or otherwise enter or remain in the office unaccompanied. Only members of the family farm operation were permitted to inspect the records kept in the office. The farm operations were not operated under a corpo-

rate business structure, but rather as a family partnership. Under these circumstances, the Court determines that Richard Bli's subjective expectation of privacy in the business office and records contained therein is one which society would recognize as reasonable.

█ James Bli, on the other hand, has failed to offer any evidence of his own subjective expectation of privacy in the business office or the farm records. His brother's affidavit indicates that James is a partner in the business, but it establishes no connection between the records and James himself. Richard avers in his affidavit that many of the business records "had been prepared by [him] or at [his] direction." Affidavit of Richard J. Bli, ¶ 5. James, however, has failed to offer any evidence of his involvement with the documents relating to farm operations. Consequently, the Court determines that James Bli has not established a subjective expectation of privacy in the place searched or the things seized.

### III.

Turning to the merits of the motion, the defendants contend that the search warrant was overly broad, and that it was not supported by an affidavit which adequately demonstrated probable cause that the items sought were connected to criminal activity.

### A.

█ With respect to the overbreath argument, the defendants direct the Court to a quote from *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), to advance the premise that the Fourth Amendment prohibits "general warrants" and thereby prevents authorities from "rummaging" through one's home armed only with a blanket suspicion of wrongdoing. The holding in *Stanford,* however, was more carefully constructed. The plaintiff there was suspected of harboring materials regarding communism, his home was searched, and several books and papers were seized that were not related to communist activities or beliefs. The Court reasoned that warrants must particularly describe the books and papers that may be seized especially when the "basis for the seizure is the ideas which they contain." *Id.* at 485, 85 S.Ct. 506. When First Amendment rights are implicated, the standard under which a warrant is scrutinized is heightened. The case at hand, however, rests on no such rights.

█ Rather, in the present case, "the degree of specificity required is flexible and will vary depending on the crime involved and the type of items sought. Thus, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir.1988)(internal quotes and citations omitted). In *United States v. Ford,* 184 F.3d 566 (6th Cir.1999), the Court of Appeals examined a search warrant which authorized the seizure of several documents relating to illegal bingo operations which were conducted in violation of Kentucky state law. The search warrant authorized the seizure of several categories of records relating to illegal gambling, and additional categories of records which were not limited by their connection to criminal activity or circumscribed by a range of dates. The Court noted that the affidavit filed in support of the search warrant provided a beginning point of the alleged illegal activity, and did not contain any information that criminal conduct occurred prior to that commencement date. The Court noted that the "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a war-

rant overbroad." *Id.* at 576. The Court made this observation in the course of applying a more general limitation that the authorized search may not be broader than what was "reasonable given the facts in the affidavit supporting the warrant." *Id.*

█ In this case, the search warrant affidavit clearly establishes several inconsistencies in the reported production of potatoes and other crops on forms furnished at various times by Richard Bli. Depending on the purpose of the report, the government had a reasonable basis to conclude that production was either over-reported or under-reported. Consequently, the affidavit set forth facts from which the magistrate could reasonably conclude that the investigators needed information as to the actual production levels for Bli Farms during the relevant time period, that is, from 1991 through 1997. All of the categories of items for which seizure was authorized in the search warrant constitute documents from which that information could reasonably be obtained.

On the other hand, the search warrant itself contains no limitation with respect to dates. However, on the search warrant return, which is attached as an exhibit to the defendant's motion, none of the categories of documents identified thereon by date fall outside of the range stated in the affidavit.

The defendants argue that the search warrant in this case should be "conclusively invalidated." However, in *Ford,* the Court of Appeals held that "the remedy for an overbroad warrant is to sever the overbroad portions of the warrant from those portions that are sufficiently particular." *Ford,* 184 F.3d at 578. Thus, the Court in that case determined that "[t]he portions of the warrant limited to fruits and evidence of gambling are sufficiently particular; even though those portions do not contain a time limitation, their subject-matter limitation (fruits and evidence of gambling) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit." *Id.*

None of the parties in this case offered in evidence any of the documents seized from the Bli Farm office trailer. At the hearing, the Court specifically invited the defendants to describe those documents whose seizure was either unreasonable given the description in the affidavit, or otherwise outside the bounds of the warrant. The defendants declined to identify any specific documents; rather they chose to rely solely upon their argument that the warrant and consequent seizure should be invalidated in their entirety.

The Court must reject the defendant's contention that the warrant is invalid in its entirety. The search warrant, taken together with the affidavit, limits the authorized seizure to those documents related to information that would lead to the determination of actual production values, claimed production values, crop insurance claims, and disaster loan applications. The warrant was specific; it cannot be fairly characterized as a general warrant. Moreover, the defendants have not brought to the Court's attention the seizure of any items which can be characterized as beyond the description contained in the search warrant itself.

### B.

█ The defendants also argue that the affidavit for the search warrant did not adequately establish probable cause to permit the magistrate to determine that the items sought would be located in the place that was searched. When reviewing the magistrate's decision to issue a search warrant, this Court must determine "whether the magistrate had a substantial

basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991) (internal quotes and citations omitted). The Court should not conduct a *de novo* review of the affidavit, but rather should view it in a common sense manner. "[T]he magistrate's probable cause determination should be afforded great deference by the reviewing court." *Id.*

The defendants claim that the search warrant affiant in this case provided only factually void conclusions that the Bli Farms headquarters was located at the address stated in the affidavit. The defendants rely upon *Whiteley v. Warden of Wyoming State Penitentiary,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), in which the Supreme Court stated:

> The decisions of this Court concerning Fourth Amendment probable cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant.

The defendants provide no further analysis. The defendant also rely on *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for the proposition that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."

■ The defendants fail to recognize the current and proper test for determining if the affidavit established probable cause to believe that the evidence would be found at the place cited. "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances,

that ... evidence of a crime will be found in a particular place." *Davidson,* 936 F.2d at 859. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Smith,* 182 F.3d 473, 477 (6th Cir.1999).

Agent Erlandson's affidavit filed in support of the search warrant establishes the following facts:

● Special Agent Erlandson was employed for 22 years as an investigator with the Office of the Inspector General for the USDA and had received specialized training in crimes relating to agriculture fraud.

● Agent Erlandson participated in the execution of over 100 search warrants on USDA cases.

● Agent Erlandson described the property in detail after personally observing desks and computers in the trailer office.

● Agent Erlandson reviewed voluminous documents reflecting insurance claims, loan applications and annual crop production of Bli Farms.

● Based on the preceding information, Agent Erlandson attested that he was aware that the farm operations were conducted from the 101 Ridge Road address.

■ In reviewing the affidavit in the totality of the circumstances, it is not difficult to conclude that more than "bare conclusions" were recited by the affiant and relied upon by the magistrate. It appears that an experienced investigator of agricultural criminal activities conducted a thorough investigation of the Bli Farms operation by reviewing extensive documentation. In the course of reviewing the documents, the address used by Bli Farms would have been clearly apparent based upon the nature of the documents reviewed. The

magistrate, considering the documents relied upon by the search warrant affiant and the familiarity with farm operations exhibited by this affiant, had abundant basis to form a belief that documents reflecting actual production of potato crops would be found at the address specified by the agent.

The Court concludes that the magistrate had a substantial basis for finding that there was probable cause to believe that the documents sought by the search warrant applicant would be found at the Bli Farms office located at the address recited in the affidavit.

### IV.

For the reasons stated above, the Court finds that Richard Bli had a reasonable expectation of privacy in the Bli Farm office building which was searched and from which documents were seized. However, the Court concludes that the search warrant was based on an affidavit which established probable cause to believe that evidence relating to the crop insurance fraud scheme described in the affidavit would be found at the Bli Farm offices located at the Ridge Road address in Bay City, Michigan, and further that the search warrant contained the requisite specificity and was not a general warrant. The Court also finds that the defendant, James Bli, failed to establish a subjective expectation of privacy in the premises that were searched.

Accordingly, it is **ORDERED** that the Motion to Suppress Evidence [dkt # 45] filed by defendant, Richard J. Bli, and joined in by defendant, James E. Bli, is **DENIED.**